| 55  | 403 |
| 174 | 71  |

## JESSE B. THOMAS *et al.*

*v.*

## THE CITY OF CHICAGO.

1.  MARRIED WOMEN—*what constituted their separate property prior to the act of* 1861.  Money belonging to a married woman, coming to her from various sources other than her husband, during the years 1845 to 1848, and reduced to possession by the husband, became his property, although it was his design to invest it for the use of the wife; until so invested, it belonged to the husband.

2.  It was *held,* the mere fact that the money came to the husband in right of the wife, did not constitute it her separate property.  So money, which came to her by distribution from her mother's estate, was not separate property, nor money received under a will, the bequest being general to her, without any limitation of it as her separate estate, or for her exclusive use.

3.  In order to constitute money coming to the wife in such case, her separate property, that character must have been imparted to it by the instrument or power by which she was invested with her right to it.

4.  SAME—*of property held by the husband in trust for the wife.*  But whether money used by the husband in the purchase of an interest in land, belonged to the wife or not, such interest would become her separate property, if the conveyance thereof declared that the grantee, the husband, was to hold the title in trust for her.  Except as against creditors, a husband may make a gift to his wife of property to the amount of a reasonable provision for her.

5.  TRUSTS—*subsequent purchase by the trustee in his own name.*  But where the interest so purchased in trust for the wife was a mere possessory

right in the land, not derived in any way from the owner of the fee—being only a squatter claim upon canal lands owned by the State, in Cook county —and the husband afterwards purchased the fee from the canal trustees, at public sale, in his own name and with his own funds, without the reservation of any trust in respect thereto in favor of the wife, her separate interest under the former conveyance would thereby come to an end, and the entire estate in the land become vested in the husband, to the exclusion of any separate estate in the wife.

6.   The doctrine that a trustee is not permitted to deal, for his own benefit, in respect to the trust property, does not apply in such a case, because there was not any purchase of the subject of the trust, or any estate that ever had any legal relation to it.

7.   RESULTING TRUST—*when it arises.*   To raise a resulting trust in such case in favor of the wife, on the ground that her money went into the purchase of the land, that fact must be clearly proved ; it would not be inferred from the mere fact that the husband had in his hands sufficient money of the wife to make the purchase, at the time.

8.   A trust will not be raised by implication or operation of law, in contravention of public policy.

9.   DEED—*how far conclusive upon the grantor as to the extent of interest conveyed.*   Where a deed purports to convey all the interest and title of the grantor, it will be given effect accordingly, although he actually held a greater interest than either he, or the grantee, at the time of the conveyance, supposed he owned.   A party must know enough about his title, not, by his want of knowledge of it, to mislead a purchaser to his detriment.

APPEAL from the Superior Court of Chicago ; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion of the court contains a statement of the case.

Messrs. SLEEPER & WHITON, for the appellants.

Mr. M. F. TULEY, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

On the twenty-first day of September, 1847, Thomas and Dennis Mullin, settlers on twenty acres of canal land in Cook county, executed a quit claim deed to Jesse B. Thomas of all

their interest in said land, and their so-called pre-emption right to it, and, at the same time, entered into a written agreement to lend their aid in obtaining a pre-emption right; the consideration expressed was $576, the deed stating that it was of the separate money of Adeline C. Thomas, wife of the said Jesse B., and that the conveyance was in trust for her. This, together with other land, was subdivided by the canal trustees into blocks and out lots.

On the tenth day of May, 1849, Jesse B. Thomas purchased at public auction from the board of trustees of the Illinois and Michigan canal, out lot 10, of said subdivision, containing about seven acres, and being a part of said twenty acres, for $1205, one quarter of which, and one year's interest in advance on the balance, were paid down, the rest of the purchase money to be paid in three equal annual installments, for which notes were given. The appraisal of the lot by the State appraisers was $875. There was no order or entry on the records, or among the files of the office of the canal trustees, granting a pre-emption right to said lot to any one.

Jesse B. Thomas died February 21, 1850. At the time of his death, the last two of said notes were unpaid, the first one having been paid by him.

On the thirty-first day of August, 1850, appellee purchased at an administrator's sale said out lot 10, for $2000, which appears to have been the full value of the lot, and received from the administrator of Jesse B. Thomas a deed thereof, the administrator, at the same time, assigning the certificates of purchase received at the canal sale. Adeline C. Thomas executed to the appellee her quit claim deed, of the same date, of all her interest and dower in the lot, for the consideration of one dollar; at the time, neither she, nor the appellee, or administrator, supposed she had any interest in the lot, except a supposed dower right.

The appellee paid the last two of said notes as they became due, and received from the said canal trustees their deed of said out lot, September 16, 1856.

This bill was filed by the said Adeline C. Thomas, to have her said deed to the appellee cancelled, and if the appellee had received a conveyance of the said out lot from the board of canal trustees, that it should be decreed to convey the same to her. The complainant died during the progress of the suit, and it was revived in the names of the appellants, her heirs.

We do not think the $576 paid to the Mullins belonged to Mrs. Thomas, as her separate property, or that she had any separate estate, save what her husband gave to her. It is true, some of the witnesses speak loosely of her separate estate, evidently without a correct understanding of what is meant thereby in a court of equity—they doubtless intending by it, property which came to her husband in her own right. It seems to have come mostly by bequest from John Rathbone, and John Rathbone, Jr. Their wills are set out, and the bequests are general to her, without any limitation of them as her separate estate, or for her exclusive use. The part that came to her by distribution from her mother's estate would not be separate estate; to make it such, that character must be imparted to it by the instrument or power by which she was invested with her right to it.

As soon as these moneys were received, they became the property of Jesse B. Thomas; and although it appears to have been his design to invest them, or an equal amount, for the use of his wife, they remained his property until he actually did so invest them. But it matters little, as regards this case, whether this money, before it was paid to the Mullins, was the separate property of Mrs. Thomas or not. Except as against creditors, a husband may make a gift to his wife of property, to the amount of a reasonable provision for her. The interest, whatever it was, which was purchased from the Mullins, became the separate estate of Mrs. Thomas. There was a gift of it from Mr. Thomas to her. That is sufficiently manifested by the deed and agreement which were executed at the time. In respect to the subject matter of that purchase, Mr. Thomas was the trustee of his wife, but that

was not any interest in the land, as against the canal trustees and their grantee; it was a naked possessory claim to the land, under which possession of the land could be held against any one not able to show a better right to it, and had it ripened into a pre-emption right, that would have given the exclusive privilege to purchase the land at the appraisement, without reference to the improvements. But there was no pre-emption right to the land, and it was offered for sale at public auction by the canal trustees to the highest bidder, and Jesse B. Thomas bid off in his own name, not the whole twenty acres, but only seven acres of it—out lot 10—for $1205, the appraisement being $875, and paid half of the purchase money.

Whence arises the alleged equity of Mrs. Thomas in this estate purchased of the canal trustees? Her trust interest formed no part of that estate, and never had any legal or equitable connection with it. That trust interest came to an end on the sale of the land by the canal trustees, and the full and complete title to the land, entirely independent of it, was obtained from the canal trustees.

Why was it the duty of Mr. Thomas, as trustee of that squatter claim, to buy this land for his wife? To do so, would have required him to make another gift to his wife. Because he had made her one gift of $200, that being about the proportional part of the consideration for this seven acres, it surely was not his duty to make her another gift of $1205, the purchase price of the land.

With respect to the duty of a trustee in relation to real property, it is held, that pernancy of the profits, execution of estates, and defense of the land, are the three great properties of the trust. Therefore, a court of chancery will compel trustees— 1. To permit the *cestui que trust* to receive the rents and profits of the land. 2. To execute such conveyances as the *cestui que trust* shall direct. 3. To defend the title of the land in any court of law or equity. Tiffany & Bullard on Trusts and Trustees, 815.

No omission of duty in these respects appears, and even if there were any, that, of itself, would not create a trust in this land.

The pre-emption right, so far as any duty in respect to that was concerned, did not depend upon subsequent improvements to be made, but upon previous improvements, the law allowing the pre-emption right, which was passed February 21, 1843, providing, that in all cases where improvements were made upon the canal lands previous to the first day of February, 1843, the owner of such improvements should be entitled to purchase the said land on which said improvements were situated, at an appraisement to be made, as therein provided, without reference to said improvements.

The doctrine that a trustee is not permitted to deal for his own benefit in respect to the trust property, does not apply, because here was not any purchase of the subject of the trust, or any estate that ever had any legal relation to it.

But if there be a guardian or trustee for an infant, to whom lands are descended or devised, but the title is really in a third person, and the trustee or guardian buy in the title of the third person, this shall not be taken to be a trust for the infant, for such a trustee or guardian is at liberty to purchase it, as well as any other person. 1 Sand. Uses and Trusts, 368. And although, in the note to Lesley's case, 2 Freeman, 52, the authority cited in support of the doctrine, the editor says, this seems contrary to the current of modern authorities, we think the principle holds true, at least in this case.

This was not only a sale at public auction, which the trustee had no agency in procuring, but it was a sale of land in which the State had an interest; it was for its advantage that the land should bring as high a price as possible, and that there should be free competition in the bidding at the sale. Mr. Thomas, as would seem, was willing to pay more for this lot, than any one else, and to disable him from buying for himself, would have tended to diminish competition and in that respect be contrary to public policy, and a trust will not be raised by implication or operation of law, in contravention of public policy.

It is contended that, from his position, Mr. Thomas derived an advantage in the purchase of this land, which equity does not permit; that on account of his claim to the land, favor was shown to him in the sale of it, and that other persons refrained from bidding against him. Nothing of this kind appears in the record. His attitude with respect to the land was rather hostile, than otherwise, to the owners of the title, and it is not to be presumed that the canal trustees departed from their duty, to sell the land at public auction for the highest price that could be obtained, and struck it down to Mr. Thomas, at a less price than could have been obtained from any one else; and so far from any one refraining from bidding against him, the inference would be, that there was competition in the bidding, from the fact that the lot was sold at a considerable advance above the appraisement.

It is urged, that the entries in Mr. Thomas' book of accounts show, that at the time of this purchase, he had in his hands, of his wife's moneys, sufficient to have made this purchase, and that it must be presumed that he used them in doing so, or if not, that it was his duty to so use them.

To raise a resulting trust, on the ground that the money of Mrs. Thomas went into the purchase of the land, that must be clearly proved; it would not be inferred from the fact that Mr. Thomas had in his hands sufficient money of hers to make the purchase. Nor was it a legal duty to invest any of her moneys in this particular land; because he had made a gift of the Mullin claim to his wife, he was not required to go on further, and secure to her the title to the land. She must have taken the gift such as it was; he was not required, in order to render it the more effectual, to add to it an additional purchase, either by the use of his own or her money.

It is quite likely, when Mr. Thomas bought this Mullin claim, he intended to secure for his wife the title of the land, but that afterwards he changed that intention, and made the investment in some other property.

From the Mullin papers, and the book entries offered in evidence, Mr. Thomas appears to have been quite exact in preserving evidence in writing of all moneys received on account of his wife, and of all investments made for her benefit; quite a number of pieces of property are entered as purchased for her benefit, and if he had intended the purchase of this lot for the use of his wife, it is remarkable that he should not have left behind him any trace of that intention, either in the certificate of purchase, or notes given at the canal sale, in his book of accounts, or any other writing, nor have communicated the fact to his wife. The absence of any such testimony, in view of his practice in that respect, is significant evidence, that he made the purchase of this lot for himself, and did not intend to impress upon it a trust in favor of his wife, and we do not think such a trust is raised by implication, or operation of law.

But even had there been a trust in favor of Mrs. Thomas, we think her deed to the appellee would have released it, and that that deed should stand.

The appellee seems to have paid the full value of the lot at the administrator's sale; it was supposed the administrator's deed and Mrs. Thomas' deed conveyed a complete title to the lot, save the claim of the canal trustees for the unpaid purchase money; and although the parties had been both under a mistake as to Mrs. Thomas' title, supposing it to be only a dower claim, the appellee would have been misled by the conduct of Mrs. Thomas, in executing her deed and not disclosing that she had any further interest in the lot, to pay out its money for the lot, believing it to be unaffected by any claim of Mrs. Thomas, and to go on and make the further two remaining payments to the canal trustees. We must intend the appellee would have been so misled, as the deeds of the administrator and Mrs. Thomas both bear the same date. A party should be held to know enough about his own title as not, by his want of knowledge of it, to mislead a purchaser to

his detriment. A court of equity should not lend its aid to a party to recall a deed executed under such circumstances.

There are, indeed, cases where even ignorance of title will not excuse a party, for if he actually misleads the purchaser by his own representations, although innocently, the maxim is justly applied to him, that where one of two innocent persons must suffer, he shall suffer who, by his own acts, occasioned the confidence and the loss. 1 Story Eq. Ju. sec. 387.

The deed of Mrs. Thomas to the appellee purported to be a conveyance of all her interest in the land, and amounted to a representation that it was such.

The decree of the court below, dismissing the bill, is affirmed.

<em>Decree affirmed.</em>