JOSEPH A. KEITH

*v.*

CHARLOTTE MILLER *et al.*

*Opinion filed June 18, 1898.*

1. TRUSTS—*facts necessary to raise resulting trust must be clearly proved.* To raise a resulting trust in favor of the wife, upon the ground that her money went into the purchase of land, that fact must be clearly proved, and cannot be inferred from the fact that the husband had in his hands enough money of the wife to make the purchase.

2. SAME—*resulting trust must arise at time of conveyance.* A resulting trust must arise, if at all, at the time the conveyance is made vesting the title in the grantee.

3. SAME—*a trust need not be declared in writing, but simply manifested.* Section 9 of the Statute of Frauds (Rev. Stat. 1874, p. 541,) does not require that the trust shall be declared in writing, but simply manifested and proved; and where there is written evidence of the existence of a trust, the danger of parol declarations, against which the statute is directed, is effectually removed.

4. CONSTRUCTION—*several instruments evidencing one transaction are construed as one.* Where a husband and wife agree on a disposition of their property in case of death, and the husband prepares two wills at the same time in accordance with such agreement, both wills will be read and construed together as a single instrument.

5. STATUTE OF FRAUDS—*when trust is sufficiently manifested in writing.* Where a husband and wife agree upon a disposition of property in case of death, title to all of which is in the husband, and the

husband prepares two wills, one for himself and the other for the wife, alike except as to property and beneficiaries, describing the property disposed of by the wife's will as "a certain tract or parcel of land belonging to my husband * * * and myself," followed by a specific description, a trust in favor of the wife in an undivided half of the property so described is thereby sufficiently manifested in writing, though the wife's will is subsequently revoked and the husband's will is destroyed upon his wife's death.

WILKIN and CARTWRIGHT, JJ., dissenting.

APPEAL from the Circuit Court of McDonough county; the Hon. JEFFERSON ORR, Judge, presiding.

This was a bill in equity, filed September 1, 1893, in the circuit court of McDonough county, by Charlotte Miller, Mary Jane Wolf, Robert N. Tyner and Elijah T. Wolf, against Joseph A. Keith, claiming the west half of the north-east quarter of section 7, township 7, range 1, in McDonough county, Illinois, devised to them under the following will of Martha A. Keith, the wife of Joseph A. Keith:

"*First*—I give, bequeath and dispose of my property as follows, viz.: My real estate, consisting of a certain tract of land described and designated as follows, viz.: Fifty-two acres of land on the old homestead, (Tyner homestead,) located near on Blue river, in Hancock county, Indiana, to be equally divided among my dear relatives: my sisters, namely, Mary Jane Wolf and Charlotte Miller; my brother, Robert N. Tyner, and nephew, Elijah T. Wolf; and further or secondly, I give, bequeath and devise unto my dear relatives the following described real estate, viz.: the west one-half of the north-east quarter of section 7, in township 7, north, and range 1, west of the fourth principal meridian, in McDonough county and State of Illinois, with the following proviso or conditions: That my husband, Joseph A. Keith, have, during his lifetime, the entire use and control of it, and in case he should make sale of the same, then the proceeds of said sale shall go to my relatives above named, equally divided.

"In witness whereof I hereunto set my hand and seal this 28th day of November, 1885.     MARTHA A. KEITH."

The will was executed in the presence of two witnesses, and admitted to probate in McDonough county February 3, 1886.

The bill alleges that Martha A. Keith died in McDonough county February 1, 1886, leaving a husband, Joseph A. Keith, surviving her, but leaving no child or children; that she left a last will and testament, which was duly probated February 3, 1886; that Joseph A. Keith claims the aforesaid land in fee (the land in Indiana mentioned in the will not being involved in this suit) and denies complainants' title, and prays that complainants be decreed to be the owners subject to the life estate of Joseph A. Keith, and that the court decree that he holds the land in trust for complainants, subject to said life estate. The bill also alleges that Joseph A. Keith bought this land, together with other land, part of which is seventy-eight acres on the south side of the south-west quarter and on west half of the south-east quarter of section 6, with the separate money of Martha A. Keith, derived from her father, Elijah Tyner, both before and after his death, in 1871; that Keith received $1150 from said Tyner before his death and $1913 from his estate, all belonging to his wife, Martha A.; that said Keith and his wife agreed that each should own an interest in said land in proportion to the amount invested therein by each; that said Keith agreed with said Tyner that the money he had or should receive from him or his estate should be invested for the use of Martha A., or her heirs at the death of said Keith; that said Keith bought the lands and took the deeds in his own name; that said Keith and his wife, in her lifetime, had made an oral partition of said lands, by which it was agreed that she should have the lands in controversy as her separate property; that said Keith wrote a joint will for himself and wife, by which he devised the same from said Martha A. to himself for life, remainder to her heirs, writing his own name therein, and that the same is a declaration of trust in which he held the land; that pursuant to such agreement said Martha A. claimed to be the sole owner, subject to such life estate; that said Keith has been in

possession since her death, and now denies that she ever had any interest in the land or that complainants now have, and denies she had any right to dispose of the same by devise; that said agreement is not of record and that said Keith is liable to dispose of the land. The bill prays that said oral partition be confirmed and for general relief.

Joseph A. Keith put in an answer to the bill, in which he admits the making and probate of the will of his wife, Martha A., and the death of Elijah Tyner; denies knowledge of her will until after her death; denies that he purchased the land in controversy, or any land, with money belonging to Martha A. or with money received from her father; denies there was any agreement that she should have any interest therein or that he bought any land with such money; denies that he agreed with Elijah Tyner to invest any money for Martha A., or that the same or any land or property should go to her or her heirs at his death, and sets up the Statute of Frauds as a defense; denies that he wrote a joint will for himself and wife, and that any will of his wife contained a declaration of trust signed by him; denies that there was any oral partition, and that his wife was to have the land in controversy as her separate property, or that she ever claimed it except by her will, which was without his knowledge or consent; says that he became the owner of all the lands mentioned in the bill about forty years ago, by deeds to himself, paying the consideration out of his own means and not from his wife's, and did not have any of her money when the conveyances were made; that said conveyances were recorded and kept at his home; that his wife knew said lands were so conveyed to him, and with her knowledge and consent he had exclusive and open possession and control, and paid taxes since the date of said deed, claiming to own the same; that complainants have had knowledge of his claim, since Martha A. Keith's death, from his possession and from

the records, and have acquiesced therein; sets up *laches* and possession for twenty years, and payment of taxes for seven years under color of title, as a defense; that he is absolute owner of said land and that Martha A. had no interest therein which she could dispose of by will, and denies that complainants are entitled to any relief.

A general replication was filed by complainants. The decree below found there was a resulting trust in favor of Martha A. Keith in all the land. Joseph A. Keith appeals.

SHERMAN & TUNNICLIFF, and NEECE & SON, for appellant:

All money received by the wife prior to the Married Woman's act of 1861 became the absolute property of the husband, free from any interest of the wife. All her earnings, or the income or proceeds of such money, in whatever form, were the property of the husband. The marriage was an absolute gift of the money to the husband. *Jassoy* v. *Delius,* 65 Ill. 469; *Dubois* v. *Jackson,* 49 id. 49; *Hanchett* v. *Rice,* 22 Ill. App. 442; *VanIngen* v. *Brabrook,* 27 id. 401; 2 Blackstone's Com. 235.

When the husband uses the wife's separate property with her knowledge and consent a gift may be inferred, in the absence of a contrary agreement. *Duval* v. *Duval,* 153 Ill. 49; *Reed* v. *Reed,* 135 id. 482.

Evidence to sustain a resulting trust must be certain, clear and cogent, and is always received with caution. *Reed* v. *Reed,* 135 Ill. 482; *Mahoney* v. *Mahoney,* 65 id. 406; *Corder* v. *Corder,* 124 id. 229.

The trust must arise, if at all, from the original transaction, and at the time it takes place, and at no other time. The funds must be advanced or invested at the time the purchase is made. *Reed* v. *Reed,* 135 Ill. 482; Hill on Trustees, 97; 1 Perry on Trusts, (3d ed.) sec. 133; *Walter* v. *Klock,* 55 Ill. 362; *Perry* v. *McHenry,* 13 id. 227; *Alexander* v. *Tams,* id. 221; *Remington* v. *Campbell,* 60 id. 516; *Loomis* v. *Loomis,* 28 id. 454.

BAILY & HOLLY, and DAVID MYERS, for appellees:

Where land is purchased with money of one and title is taken by another, a resulting trust will be raised. *Smith* v. *Sackett*, 5 Gilm. 534; *Stephenson* v. *McClintock*, 141 Ill. 604; *VanBuskirk* v. *VanBuskirk*, 148 id. 9.

In such case a trust arises, notwithstanding there may have been previous verbal contracts to that effect. *Smith* v. *Smith*, 85 Ill. 189; *Harris* v. *McIntyre*, 118 id. 275; *Williams* v. *Brown*, 14 id. 200.

A resulting trust does not arise from or depend upon any agreement between the parties. It results from the fact that money of one has been invested in land and the conveyance taken in the name of another. In such case a trust is raised in favor of the party whose money is used to purchase the land. *Bruce* v. *Roney*, 18 Ill. 67.

Where one holding a fiduciary relation invests fiduciary money in lands, taking title to himself, a resulting trust will arise. 1 Perry on Trusts, pars. 127, 128; *Rice* v. *Rice*, 108 Ill. 199; *Weaver* v. *Fisher*, 110 id. 146; *Stowe* v. *Kimball*, 28 id. 93.

A court of equity has the power to, and will in a proper case, pursue a trust fund and restore it to its original purpose, into whosesoever hands it may come, unless held by innocent purchasers without notice. If disposed of and the proceeds re-invested in other property the trust will attach to the latter. *Henry County* v. *Drainage Co.* 52 Ill. 454; *Cookson* v. *Richardson*, 69 id. 137; *Renfrow* v. *Pearce*, 68 id. 126; *Attorney General* v. *Agricultural College*, 85 id. 516; *Seaman* v. *Cooke*, 14 id. 501; *Scott* v. *Moore*, 3 Scam. 306.

A resulting trust may be proven by parol evidence. 1 Perry on Trusts, par. 137, *et seq.; Nichols* v. *Thornton*, 16 Ill. 113; *Reynolds* v. *Sumner*, 126 id. 58.

Mrs. Keith was not guilty of *laches*. 1 Perry on Trusts, par. 141; *Reynolds* v. *Sumner*, 126 Ill. 58.

A husband may, under the common law, hold personal property belonging to his wife as her separate property. *Bowman* v. *Ash*, 143 Ill. 649.

Where a husband buys property with money of his wife, taking the title thereto in his own name, he will hold it in trust for her. *Slocum* v. *Slocum,* 9 Ill. App. 142.

This is so, even though he might have reduced the money to possession as his own, provided he agreed to invest it for the benefit of his wife. *Loften* v. *Witboard,* 92 Ill. 461.

Where a husband receives money of his wife as her trustee or agent his marital rights do not attach. He holds as trustee for her, and the money constitutes her separate property. *Trustee* v. *Bryson,* 13 S. E. Rep. 619.

Where a husband receives money due his wife upon representation that he will hold it as her separate property and invest it in trust for her, his marital rights do not attach. *State* v. *Reigart,* 39 Am. Dec. 628; Schouler on Domestic Relations, pars. 104, 105, 123, 126; 9 Am. & Eng. Ency. of Law, 845-848; 2 Story's Eq. Jur. pars. 1378-1381; 2 Perry on Trusts, par. 647.

Whenever a person, by his words or conduct, causes another to believe in the existence of a certain state of facts, and induces him to act upon that belief so as to change his previous condition, he will be estopped to aver against the latter a different state of facts. *O'Neal* v. *Auten,* 58 Ill. 148; *Casler* v. *Byers,* 129 id. 657; *Kinnear* v. *Mackey,* 85 id. 96; *Hill* v. *Blackwelder,* 113 id. 283; *People* v. *Brown,* 67 id. 435.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is contended in the argument by appellees that the facts establish a resulting trust as to the land in controversy. It does not appear by a preponderance of the evidence that when the property in controversy was purchased by Keith and the conveyance made to him the consideration was paid with the money of his wife. Keith swears he bought all the land with his own money; that he had $600 when he came to Illinois with his wife, in 1850, which he had earned farming and in the car-

penter business; that he bought land with this money, which land he afterwards sold and bought the land in controversy, in 1860; that he never got a dollar of any one to buy land with. The receipts introduced by complainants, signed by Martha A. Keith and Joseph A. Keith, to Elijah Tyner,—one for $550, dated March, 1854, and one for $350, dated December, 1871,—for advancements to her, do not show that the money went to purchase this land. Keith says his wife lost $400 in the bank which broke in Bushnell, and she loaned $400 to one Bobbell and never got anything from him. He says he borrowed $500 from Elijah Tyner, his wife's father, to buy cattle with, and paid him $50 a year interest for nine or ten years; that no part of it went into the land; that he paid this $500 to his wife as soon as her father died.

This testimony stands uncontradicted. To raise a resulting trust in favor of the wife on the ground that her money went into the purchase of the land that fact must be clearly proved. It would not be inferred from the fact that the husband had in his hands sufficient money of the wife to make the purchase. *Thomas* v. *City of Chicago*, 55 Ill. 403; *Corder* v. *Corder*, 124 id. 229.

It appears from the evidence that the land in controversy was bought in 1855. The common law was in force in this State at that time. Joseph A. Keith was married to Martha A. Keith in 1845, and all moneys received prior to the act of 1861, when reduced to possession, "by force of well known and long established principles of law governing marital relations, became the property of the husband, and the chattels purchased with it became his likewise. The statute of 1861 never was designed to take from the husband that which belonged to him as a consequence of the marriage, nor could it do so without violating those principles of right and justice no legislature has ever, knowingly and of purpose, disregarded and ignored." (*Farrell* v. *Patterson*, 43 Ill. 52; *Dubois* v. *Jackson*, 49 id. 49; *Jassoy* v. *Delius*, 65 id. 469.) Under the

foregoing decisions all the money received by Martha A. Keith prior to 1861 became the property of her husband, and even if it had been paid towards the purchase of the land in controversy, it could not be regarded as the money of the wife.

It is stated that $2162.91 was received by Martha A. Keith after the death of her father. This cannot affect the question, as the trust must result, if at all, at the instant the deed is taken and the title vests in the grantee. Perry on Trusts (sec. 133) says: "No oral agreements and no payments, before or after the title is taken, will create a resulting trust, unless the transaction is such, at the moment the title passes, that a trust will result from the transaction itself." The same doctrine was held by this court in *Reed* v. *Reed*, 135 Ill. 482, where we said: "The resulting trust must arise, if at all, at the time of the execution of the conveyance." The evidence is not sufficient in this case to establish a resulting trust.

Was there a declaration of trust, manifested and proved by some writing, within the meaning of section 9 of chapter 59 of the Revised Statutes of Illinois? It appears by the evidence that on the 19th day of September, 1885, Joseph A. Keith prepared two wills—one for his wife and one for himself. Both were in his own handwriting. Keith testified: "At the time the will I have produced in court was written, I wrote one for myself. Both were written at the same time. Myself and wife talked over our affairs, and about the land each should have and how it should be disposed of, and after the conversation it was reduced to writing in these wills. * * * Whatever agreement we made was put in the wills just as we agreed." The first clause of the will drawn for his wife devised to complainants fifty-two acres of land in Hancock county, Indiana. The following is the second clause and the part necessary to be considered in this case:

"*Second*—I also give and bequeath to my dear relatives above named, a certain tract or parcel of land which be-

longs to my husband, J. A. Keith, and myself, after we are done with it, lying and being in the county of McDonough and State of Illinois, known and described as follows, to-wit: the west half of the north-east quarter of No. 7 (seven), in township No. 7 (seven), north of range No. 1 (one), west of the fourth principal meridian, eighty acres, more or less. If the above named real estate has not been disposed of at the death of myself and husband, J. A. Keith, I bequeath it to my four dear relatives, as stated before, and if it has been sold and turned into money or real estate and has not been used for particular wants or necessities of us, what remains of it, as I stated above, either real or personal, I give to my four dear relatives, Mary Jane Wolf, Charlotte Miller, Robert N. Tyner and Elijah T. Wolf, be equally divided between them."

Keith also testified that he put the date to it; that the signature was the signature of his wife; that they consulted together with reference to getting up the will prior to his writing it, and that she consented to the same; that the will he wrote for himself and the one he wrote for his wife were alike, except her will related to the land south of the road which at her death was to go to her heirs, and his will related to the land north of the road which at his death was to go to his heirs; that there were no witnesses to either will; that he did not recollect that his name was to it, but he might have signed it; that he destroyed his will as soon as she died and before he married his second wife.

In construing these two wills prepared by and in the handwriting of Joseph A. Keith for himself and wife at the same time, they fall within the rule frequently applied by this court, that where different instruments are executed as the evidence of one transaction or agreement, they are to be read and construed as constituting but a single instrument. *Wilson* v. *Roots*, 119 Ill. 379; *Gardt* v. *Brown*, 113 id. 475; *Duncan* v. *Charles*, 4 Scam. 561; *Freer* v. *Lake*, 115 Ill. 662.

Appellant contends that, whatever might have been the efficacy of these two wills as a declaration of trust or a testamentary disposition of the alleged property of Martha A. Keith, they were revoked by the subsequent will prepared by one Edie and probated after her death. The case at bar comes within the case of *Kingsbury* v. *Burnside*, 58 Ill. 310, where it was said (p. 330): "We have seen that the trust is not necessarily to be declared in writing, but only to be *manifested and proved by writing*, and if there be written evidence of the existence of the trust, the danger of parol declarations, against which the statute was directed, is effectually removed,"—citing Lewin on Trusts, 63. In *Forster* v. *Hale*, 3 Ves. Jr. 308, decided by the master of the rolls in 1798, in construing the seventh section of the English statute respecting trusts, which is like section 9 of the statute of this State, it was said: "All declarations of creations of trusts or confidences of any lands, tenements or hereditaments shall be manifested and proved by some writing signed by the party." The master of the rolls adopted a letter as a clear declaration of trust, by which he said he meant clear evidence in writing that there was such a trust. And again the lord chancellor, in 1800, (5 Ves. 308,) in regard to adopting a letter as evidence in writing of a declaration of trust, said: "It is not necessary that it should be a declaration, but a writing signed by the party may be *evidence of a trust* admitted in that writing." The question of revocation or whether those wills were valid and operative as wills, is immaterial, but the real question is, was there evidence in writing, manifested and proved by these wills, of the existence of a trust.

In construing written instruments courts will endeavor, in all cases, to place themselves in the position of the contracting parties, so that they may understand the language used in the sense intended by the parties using it. Keith and his wife were married in 1845, were well advanced in years and were without children. They

had a farm of two hundred and eight acres of valuable land, the accumulation of their joint labor, and they talked over the matter as to how it should be disposed of at their death. The husband says that he and his wife talked over their affairs and about the land each should have, and after that conversation it was reduced to writing in these wills; that it was put in the wills just as they agreed; that he wrote the wills and they were in his own handwriting. The language is as follows: "I also give and bequeath to my dear relatives above named, a certain tract or parcel of land which *belongs to my husband, John A. Keith, and myself,* after we are done with it, and lying and being in the county of McDonough and State of Illinois, known and described as follows, to-wit: The west half of the north-east quarter of No. 7, in township No. 7, north of range No. 1, west of the fourth principal meridian, eighty acres, more or less." The language, "a certain tract of land *belonging to my husband, John A. Keith, and myself,*" clearly establishes the existence of a trust in favor of Martha A. Keith to an undivided half of the west half of the north-east quarter of section 7, township 7, north, range 1, west of the fourth principal meridian, *subject* to the use and control of Joseph A. Keith during his natural life. The trust being manifested and proved by the written wills, written by Keith himself, who was by law able to declare the trust, it must be carried out.

The decree of the circuit court will be reversed and the cause remanded, with directions to that court to enter a decree declaring the trust, and requiring the proper conveyance to complainants of one-half of the land described in the will of Martha A. Keith, dated November 28, 1885, and duly probated, but subject to the use and control of Joseph A. Keith during his natural life.

*Reversed and remanded.*

WILKIN and CARTWRIGHT, JJ., dissenting.