In re MILNE et al.

(Circuit Court of Appeals, Second Circuit. December 12, 1910.)

Nos. 55, 71.

BANKRUPTCY (§ 155*)—LIENS—PLEDGED ASSETS—COLLATERAL SECURITY.

In May, 1905, bankrupts made an agreement with K. & Co., bankers, by which they agreed to pay for goods shipped to the bankrupts by European manufacturers, to guaranty sales, etc., provided that all accounts for goods sold should be transferred to K. & Co. The bankrupts thereafter conducted business in accordance with the agreement until they failed. In May, 1906, K. & Co. borrowed money from claimant bank on notes, giving the bank a lien for their payment, on all properties or securities which had been or should thereafter be left at the bank for any purpose, and also on the balance of any account of K. & Co. with the bank, notwithstanding the property or securities may have been deposited as security for some special purpose. K. & Co. thereafter, as substituted collateral for this loan, deposited with the bank notes of the bankrupts secured by assigned accounts under the preceding arrangement, stating to the bank that the bankrupts' account with K. & Co. had both merchandise and assigned accounts against it. K. & Co. also deposited $40,000 of the bankrupts' notes taken under similar conditions with K. & Co., Limited, an English banking concern. *Held*, that both the bank and K. & Co., Limited, acquired an equitable lien on the accounts of the bankrupts so pledged to K. & Co. to secure the notes, and that K. & Co.'s trustee was estopped to claim that such assigned accounts and the proceeds thereof were not received by K. & Co. as collateral for advances made, but in payment pro tanto for such advances, as against the bank, and K. & Co., Limited, and hence both the bank and K. & Co., Limited, were entitled to share pro rata in the proceeds of such accounts as had been collected by such trustee.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 155.*]

Noyes, Circuit Judge, dissenting.

Petition to Review and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of bankruptcy proceedings of John C. Milne and Walter Turnbull, composing the firm of Milne, Turnbull & Company.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep't Indexes

Proceedings to determine the distribution of a fund held by Lawrence E. Sexton as trustee in bankruptcy of Kessler & Company, and claimed by him as such trustee, and also by the Merchants' National Bank of New York City, and by Kessler & Company, Limited, of Manchester, England. The referee directed the amount to be divided pro rata between the bank and Kessler & Company, Limited, and, his decision having been affirmed by the District Court, Sexton appeals, and also files a petition to review. · Affirmed.

See, also, 159 Fed. 280.

The following is the opinion of Olney, referee:

This is a proceeding to adjust the claim of the Merchants' National Bank herein. The proof of claim is for an indebtedness of $25,000, represented by five promissory notes aggregating that sum made by Milne, Turnbull & Co. to the order of Kessler & Co. and by Kessler & Co. duly indorsed and transferred to the Merchants' National Bank as collateral security for certain loans made to the bank by Kessler & Co., as follows: One note for $4,000, dated July 22, 1907, payable November 22, 1907; one for $6,000, made August 28, 1907, payable December 30, 1907; one for $5,000, dated August 28, 1907, payable December 30, 1907; one for $3,000, dated September 10, 1907, payable December 10, 1907; and one for $7,000, dated September 3, 1907, and payable January 3, 1908. The notes bear interest at the rate of 6 per cent. from their several dates.

The bank claims that the proceeds of certain book accounts, amounting to about $16,000, transferred by Milne, Turnbull & Co. to Kessler & Co. and collected by the receiver and trustee after the bankruptcy, are to be applied in whole or in part to the satisfaction of the bank's claim. The trustee of Kessler & Co. claims that the proceeds of such collections in the hands of the trustee are free from any lien in favor of the bank.

In May, 1905, the bankrupts who were merchants in New York, entered into an arrangement with Kessler & Co., now bankrupt, which arrangement is set forth in a letter from Kessler & Co. to Milne, Turnbull & Co. at the date of May 1st and the answer of Milne, Turnbull & Co. by letter of May 3d. The letter of May 1st is as follows:

"Messrs. Milne, Turnbull & Co., 340 Broadway, N. Y. City—Dear Sirs: Referring to our conversation with Mr. Milne and Mr. Turnbull, we beg herewith to confirm the interview and will state that we are willing to undertake the payment of goods (mohair and cottons) shipped to you by your European manufacturers at maturity, provided that such goods are shipped on time and are accepted as correct. We further agree to guarantee all your sales in connection with the orders which are subject to our approval. All accounts for goods sold by you shall be transferred to us and the Bs/L and invoices shall be plainly stamped as follows: 'This account has been assigned and is only payable to Kessler & Co., bankers, 54 Wall street, New York.' Duties and freight to be advanced by us; on all moneys advanced we shall charge 6% interest p. a. Our charge for the guarantee is to be a 2½% on the net amount due from the customers. We agree to allow you a drawing account which must at no time exceed the sum of $5,000 and against which you pledge the stock goods taken over from the account which you kept with Messrs. Wimpfenheimer & Bros. The insurance on the goods, we understand, is always covered by your open policies, whether they be in transit, in your store or on dock.

"We shall render you on or about the 6th day of each month statements of your account for the previous month.

"All advances made to you must be evidenced by your promissory notes, for such form, such length of time and such amounts as may be designated by us.

"Either party hereto may terminate this arrangement on three months notice in writing to the other.

"Please confirm this letter and oblige

"Yours very truly,                    Kessler & Co."

The answer of Milne, Turnbull & Company was as follows:

"New York, May 3, 1905.

"Messrs. Kessler & Company, Bankrupts, 54 Wall Street, New York City— Gentlemen: We are in receipt of your favor of the 1st inst. setting forth your conditions for our future arrangements, which we hereby respectfully accept and confirm.

"Yours very truly,                         Milne, Turnbull & Company."

Pursuant to the arrangement thus made, there were dealings between Kessler & Co. and Milne, Turnbull & Co. down to the time of the bankruptcy of both firms in November, 1907.

The fund the disposition of which is in question is the sum of $16,950.99, the proceeds of the collection by the receiver and trustee of Kessler & Co. of book accounts transferred by Milne, Turnbull & Co. At the date of the bankruptcy of Milne, Turnbull & Co., November 20, 1907, the amount of advances made by Kessler & Co. to Milne, Turnbull & Co. at that date was $103,740.70, less, however, the sum of $2,945.64, representing paper upon which Kessler & Co. were liable, but which they did not pay, and the sum of $19,353.55, representing the total amount of accounts receivable outstanding at the date of the bankruptcy and assigned to Kessler & Co., leaving a balance of indebtedness owing to Kessler & Co. of $81,441.51.

Pursuant to the clause of the agreement providing that "all advances made to you must be evidenced by your promissory notes," etc., Milne, Turnbull & Co. executed and delivered to Kessler & Co. notes aggregating $101,000. Of these notes, $25,000 were indorsed by Kessler & Co. and are now held by the Merchants' National Bank and are the subject of the claim herein. The notes were delivered to the Merchants' National Bank before maturity and as collateral for a loan made by said bank to Kessler & Co. on Kessler & Co.'s note. Forty thousand dollars of these Milne, Turnbull & Co. notes were indorsed by Kessler & Co. and are now held in the so-called Kessler escrow. The remainder, aggregating $36,000, came into and are now in the possession of the trustee of Kessler & Co. None of these notes had matured at the time of the failure of Kessler & Co. or of Milne, Turnbull & Co.

The business between the two firms was conducted pursuant to the agreement contained in the letter of May 1st, and the accounts receivable were assigned accordingly to Kessler & Co., and such accounts were guaranteed to Milne, Turnbull & Co. by Kessler & Co. under said agreement.

Milne, Turnbull & Co. gave their notes whenever Kessler & Co. demanded the same and for such amounts and on such terms as they required. These notes were ordinarily used by Kessler & Co. as collateral for loans obtained by them. As the notes matured, they were taken up by renewal notes. The assigned accounts were credited to Milne, Turnbull & Co. when paid, but were not credited at the time they were received by Kessler & Co. In case a discount was allowed, the amount to be credited could not be determined until it appeared whether the debtor availed himself of discount. When the account became payable, Milne, Turnbull & Co. were credited with the amount thereof, whether paid or not. In case any of the goods were returned by the purchaser, Milne, Turnbull & Co. were charged with the amount thereof. Milne, Turnbull & Co. were credited with interest from the time they were credited with said accounts.

Previous to the delivery of the notes in question, Kessler & Co. had delivered to the Merchants' National Bank, as collateral security for loans, similar notes of Milne, Turnbull & Co., indorsed by Kessler & Co.

Alfred Kessler, of the firm of Kessler & Co., at some time prior to the delivery to the bank of the notes in question, had a talk with one or more of the officers of the bank regarding the Milne, Turnbull & Co. notes. Mr. Kessler testified as follows with respect to this conversation: "Well, as far as I recollect, all that I said was this: That I said the notes were perfectly good, and that our account had both merchandise and accounts assigned against it."

It was further shown that on or about the 10th of October, on the occasion of the delivery to the Merchants' National Bank by Kessler & Co. of one of the notes in question, Mr. Kessler was asked by an officer of the bank regarding the various collateral securities to his loan; and he stated that

all the collateral which he gave to the Merchants' Bank was secured to his firm in some way. The officer of the bank testified that this had always been his understanding, and that the question was asked merely to confirm such understanding.

At the time the notes in question were delivered to the Merchants' National Bank, other collateral held by the bank was surrendered and additional loans made to Kessler & Co., so that the bank became holder for value and in good faith of the notes in question.

The trustee contends that the assigned accounts, the proceeds of which are in question, were not received by Kessler & Co. as collateral for advances made, but in payment pro tanto of such advances; that, as these accounts were not received as collateral by Kessler & Co., they were not collateral to the notes, and hence the holder of the notes could not claim the benefit of said accounts; in other words, that there was no collateral of which the bank was entitled to the benefit. However this may be, I think Kessler & Co.'s course of dealings with these notes and their statements to the Merchants' National Bank estopped them from taking this position. When Kessler handed the bank these notes, he, in substance, said to the bank that the notes represented a debt of Milne, Turnbull & Co. to Kessler & Co. When he said the notes were perfectly good and his order account (that is, Milne, Turnbull & Co.'s order account) had both merchandise and accounts assigned against it, he meant to convey the impression which the language naturally conveys: That there were merchandise and accounts assigned to secure the notes. And, in a certain sense, what Kessler said was true—the advances, which, by the agreement between the parties, were represented by notes of Milne, Turnbull & Co., were secured by the assignment of accounts to Kessler & Co.

The use made by Kessler & Co. of these notes and Kessler's declarations amount to a construction of the contract by Kessler & Co. By this construction, so far as third parties were concerned, the assigned accounts became collateral to the notes in the hands of bona fide holders for value. Kessler's declarations show that this was his understanding of the matter. In any event, I think the Merchants' National Bank had a right to assume, from what Kessler said, that there were accounts of Milne, Turnbull & Co. assigned to Kessler & Co. as security for the notes in question.

The rights of the parties, it seems to me, must be fixed as of the date of failure of Kessler & Co. At that time these notes of Milne, Turnbull & Co. were outstanding, and, so far as the bank is concerned, the notes which it held were entitled to the benefit of the accounts. I do not think, however, that they are entitled to have all the proceeds of these accounts applied towards the satisfaction of their claim, but only to share with other bona fide owners of similar notes.

At the time of the failure, there was in the Kessler & Co., Limited, escrow, $40,000 similar notes of Milne, Turnbull & Co. The whole amount of accounts assigned and outstanding at the time of the failure was $19,335.35. The trustee of Kessler & Co. has realized and collected from these accounts only the sum of $16,950.99.

In the matter of the suit relative to Kessler & Co., Limited, escrow, though the District Court decided that the securities in that escrow (among others the Milne, Turnbull & Co. notes) formed part of the bankrupt estate, this decision has been reversed by the Circuit Court of Appeals. Upon this last decision an appeal has been taken to the United States Supreme Court, but at the present time the law of the case is that Kessler & Co., Limited, are entitled to the $40,000 of Milne, Turnbull & Co. notes.

My conclusion, therefore, is that the Merchants' National Bank and Kessler & Co., Limited, are entitled to share, in proportion to the amount of notes held by them respectively, in said proceeds of the collected accounts. In other words, that the bank is entitled to 25/65, or 5/13, of said sum of $16,950.99.

An order of the referee in bankruptcy was entered October 8, 1909, which directed that a fund of $16,950.99 held by Lawrence E. Sexton

as trustee in bankruptcy of Kessler & Co. be divided between the Merchants' National Bank of New York and Kessler & Co., Limited, of Manchester, England. The payment to Kessler & Co. of Manchester is to await the decision by the Supreme Court of the United States of an appeal now pending to determine whether Kessler & Co. of Manchester are the owners of the balance of the fund after paying the claim of the Merchants' National Bank.

Wallace MacFarlane and Samuel J. Rosensohn, for appellant.

George Zabriskie and Henry G. Gray, for appellee.

Before LACOMBE, COXE and NOYES, Circuit Judges.

COXE, Circuit Judge. This is a proceeding in the matter of Milne, Turnbull & Co., bankrupts. Kessler & Co. are also bankrupts and Lawrence E. Sexton is their trustee. In January, 1908, Sexton, as trustee, filed a proof of debt against the estate of Milne, Turnbull & Co. for $131,388.99 and in March, 1908, the Merchants' National Bank filed its claim against the estate for $25,000. The debts in controversy are based upon notes of Milne, Turnbull & Co., of which Kessler & Co. held $36,000, the Merchants' Bank $25,000 and Kessler & Co., Ltd., $40,000. These notes were all made to the order of Kessler & Co. and were by them delivered to the bank and Kessler & Co., Ltd. As collateral to these notes Milne, Turnbull & Co. had assigned to Kessler & Co. accounts receivable upon which $16,951 has been collected. Each party claims this sum as collateral to its debt. On the 1st of May, 1905, Milne, Turnbull & Co., merchants, and Kessler & Co., bankers, entered into a written agreement by which the bankers agreed to undertake the payment for goods shipped to the merchants by European manufacturers at maturity and to guarantee all sales in connection with orders having the bankers' approval. It was further agreed that all accounts for goods sold should be transferred to the bankers and the bills of lading and invoices should be plainly stamped as follows: "This account has been assigned and is only payable to Kessler & Co., bankers, 54 Wall St., New York." In accordance with this agreement, thus partially stated, business was transacted until the time of the failure. When goods were sold the merchants sent copies of the invoices to the bankers and when the account was paid to them the merchants were given credit therefor.

On the 10th of May, 1906, Kessler & Co. borrowed $150,000 from the Merchants' Bank and gave a demand note therefor with collaterals and in October, 1907, the firm borrowed $65,000 more, giving similar notes therefor. By the terms of these notes the bank was given a lien for their payment "upon all properties or securities which have been or which shall hereafter be given to or left in the possession or custody of the bank by or for the undersigned for safe keeping, or for any other purpose, and also upon the balance of any account of the undersigned with said bank, and this notwithstanding such property or securities may have been or shall be deposited as security for some special purpose." As substituted collateral to the $150,000 loan the notes of Milne, Turnbull & Co., endorsed by Kessler & Co. and set out in the bank's proof of debt were received in August and September, 1907.

These notes are now owned by the bank. When the loan was negotiated Kessler & Co. stated to the officers of the bank that the Milne notes were perfectly good and Milne, Turnbull & Co.'s account had both merchandise and assigned accounts against it. The trustee of Kessler & Co. contended that the accounts, the proceeds of which are in controversy, were assigned to Kessler & Co. to be applied when collected, in payment of Milne & Co.'s debt to Kessler & Co. and not as collateral security for advances. We agree with the referee in thinking that Kessler & Co.'s trustee is estopped from taking this position for the reason that in the firm's dealing with the bank they were treated as collaterals, the bank being induced to make the loan relying upon the "merchandise and assigned accounts" which secured it. The bank had a right to assume that all the security which Kessler & Co. held for the payment of the notes was equally available to it when the notes were transferred. Kessler & Co., Ltd., having $10,000 of Milne, Turnbull & Co.'s notes are similarly situated and it follows that the fund in question should be divided pro rata between them and the bank and that the notes in the hands of the trustee of Kessler are not entitled to share in the fund.

There seems to be no doubt that by the transfer of the notes to the bank the equitable title to the collaterals which secured the notes came into the hands of the bank to the same extent as if they had been physically attached to the notes. This could not be done conveniently, but the character of the security does not change the title thereto. What the bank took was not Milne & Co.'s notes, but those notes plus the accounts due them from their customers, but payable to Kessler & Co. Kessler & Co. having received the bank's money, are not entitled to realize on the securities until their debt to the bank is paid. The accounts did not become their property, because, for the convenience of all concerned, they were permitted to collect them. We think the conclusion is irresistible that when the bank took the Milne notes it expected to receive, and Kessler & Co. expected to give the bank, the benefit of all the collaterals which secured the notes and that when the accounts were paid to Kessler & Co. it was their duty as agents or trustees for the bank to apply the proceeds in payment of the notes. The district judge arrived at the same result as the referee, but, as he says, by a somewhat different process of reasoning. After reviewing the decisions in this and other states and finding a conflict of authority existing in other states and no decision in the courts of New York clearly disposing of the question, he found an analogy in the reasoning of Stevenson v. Black, 1 N. J. Eq. 343. After quoting from the opinion of the chancellor, he says:

"It seems to me that that is exactly the situation here: Kessler was solely entitled to receive the proceeds of the accounts payable pledged by Milne, and he so remained down to the time of these bankruptcies. These accounts were, to be sure, security for all the notes that Kessler had, but when he assigned some of the notes he became a trustee for his assignee to the extent of the face value of the notes in question.

"It can hardly need authority to show that in a court of equity the cestui que trust is actually seized of the trust property; he may alien it, and any legal conveyance by him will have the same operation in equity upon the trust as it would have had at law upon a legal estate. Croxall v. Shererd, 5 Wall. 281, 18 L. Ed. 572.

"It can make no difference that a holder of collateral securing several notes assigns them successively and thereby diminishes the value of each note in the event of deficiency. Each cestui que trust takes his chances of that, but if (in this case) Kessler became a trustee for the bank by the act of assignment, no act of his, nor any change in his circumstances can change his relation to the cestui que trust he himself created. To the extent of his ability he is at all times bound to account for the trust he had himself created, and that duty has by operation of law descended to his trustee in bankruptcy."

We think the conclusion reached below is correct, and that the order should be affirmed, with costs.

NOYES, Circuit Judge, dissents.