## WOLCOTT v. COMMERCIAL INV. TRUST, Inc.

District Court, S. D. New York.
June 5, 1934.

Macklin, Brown, Lenahan & Speer, of New York City (Paul Speer and Charles F. Welch, both of New York City, of counsel), for plaintiff.

Harold F. Birnbaum, of New York City (Harold F. Birnbaum and J. J. Faricy, both of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The motion is by the plaintiff to strike from the defendant's answer three affirmative defenses as insufficient on their face. The action is one at law by the trustee in bankruptcy of Gas Engine & Boat Corporation, of Norfolk, Va., to recover an alleged voidable preference. In addition to the pleadings, there is a stipulation of facts to be considered in determining the sufficiency of the three defenses.

The complaint alleges that a certain assignment made by the bankrupt to the defendant on March 11, 1931, covering a maritime lien for $3,879.72 owned by the bankrupt against the gas boat Eloise, was preferential and voidable as to the trustee. The

complaint embraces all the conventional allegations of a plaintiff's pleading to recover for a voidable preference—transfer within four months, insolvency at the time of transfer, knowledge or reasonable cause to believe, and so on.

The answer contains denials of insolvency and knowledge or reasonable cause to believe. The facts alleged in the first and second affirmative defenses are substantially these: On August 14, 1928, the bankrupt made a written arrangement with the defendant to sell notes "secured by first mortgage liens" on engines and boats. Two months later, on October 10, 1928, the bankrupt indorsed and sold to the defendant, pursuant to the general arrangement, a note for $7,560.74 made by one Upton and secured by a mortgage on the boat Eloise. The assignment by the bankrupt of the mortgage covered "the annexed mortgage, and all right, title and interest in and to the property therein described." The mortgage and assignment were duly recorded with the collector of customs at Norfolk. At the time of bankruptcy, $3,647.14· was still unpaid on the note secured by the mortgage. Thereafter, on September 9, 1929, the bankrupt made another written agreement with the defendant that in consideration of an extension of time in which to pay its debt, it would repossess and sell vessels whose owners were in default on notes and would "turn over the entire proceeds" to the defendant. The transactions referred to above had to do, ostensibly at any rate, with the mortgage on the Eloise. The maritime lien which was assigned to the defendant in March, 1931, and which is directly involved in this action, was for supplies and repairs furnished by the bankrupt to the Eloise. It finally stood at an aggregate sum of $3,879.72. The stipulation of the parties is that $2,945.79 of the lien accrued prior to 1929 (a considerable part of this amount prior to the assignment of the mortgage on October 10, 1928), that an additional $200.04 accrued in 1929 and prior to September 9, 1929, and that the remaining $733.89 accrued subsequent to September 9, 1929. Although a large part of the maritime lien accrued prior to the assignment of the mortgage to the defendant on October 10, 1929, the defendant had no knowledge of its existence.

The third defense is a partial one, to the effect that the defendant brought a proceeding in the District Court for the Eastern District of Virginia to foreclose the maritime lien assigned to it, that the Eloise was sold to satisfy the lien, and that the net sum of $1,304.03 was realized. It is alleged that in the foreclosure proceeding the defendant incurred expenses (stipulated at $350 spent for counsel fees), and that in any event it is entitled to reimbursement for this amount.

■ 1. As to the first two defenses:

The defendant concedes that the Eloise was a vessel of less than two hundred tons and that the mortgage was therefore not a preferred mortgage under the Ship Mortgage Act (46 USCA § 911 et seq.). It also concedes the general rule to be that a maritime lien on a vessel takes precedence over an ordinary mortgage, irrespective of whether the mortgage is prior or subsequent in date. The Emily Souder, 17 Wall. 666, 21 L. Ed. 683. One of the defendant's contentions, however, is that on the facts pleaded the maritime lien was assigned to it when the mortgage was assigned, which was two and a half years prior to bankruptcy, and that the formal assignment of the maritime lien two months before bankruptcy was only confirmatory of its prior title. To the extent that this premise of an assignment of the maritime lien in 1928 or in 1929 is sound, it is plain that the formal assignment in March, 1931, was not a voidable preference. Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; Lowell v. International Trust Co., 158 F. 781 (C. C. A. 1); Wiener v. Union Trust Co., 261 F. 709 (D. C. Mich.).

The assignment of October 10, 1928, covered the mortgage by express reference and was of course executed with the mortgage in mind. But it also covered "all right, title and interest in and to the property described." The "property described" was the Eloise. The "right, title and interest" referred to was that of the assignor. The assignor then had a maritime lien on the vessel for repairs and supplies. The words used are comprehensive enough to include the maritime lien held by the bankrupt, and the instrument operated as an assignment of the maritime lien in existence at that time. The fact that the bankrupt may not have had in mind this lien and the fact that the defendant was ignorant of its existence are matters of no moment. Thomas v. City of Chicago, 55 Ill. 403; Anderson v. Nesbit, 2 Rawle (Pa.) 114; Cram v. Union Bank, *43 N. Y. (4 Keyes) 558.

■ The defendant urges further that the agreement of September 9, 1929, wherein the bankrupt agreed on default to repossess and sell any vessel and to "turn over the entire proceeds," was a further transfer of

all maritime liens then outstanding. While this agreement has a significance which I will mention later, the term quoted does not effect a transfer of the lien. On the point of an assignment earlier than that attacked as preferential, the facts pleaded indicate therefore that the maritime lien for amounts accrued before October 10, 1928, had been assigned to the defendant on that date, and that to this extent there was no preference by the transaction of March 11, 1931. For items covered by the maritime lien and accrued after October 10, 1928, the instrument executed and delivered on that day could have no operation, and as to them the first and only operative assignment was that of March 11, 1931. The amount of the lien on October 10, 1928, is not pleaded or stipulated.

█ Another contention of the defendant in support of the adequacy of these two defenses, quite apart from the comprehensive terms of the assignment of the mortgage, rests on estoppel. The basic agreement between the bankrupt and the defendant called for the sale of notes secured by first mortgage liens. The sale of the note and mortgage on the Eloise on October 10, 1928, was therefore a transfer on the understanding that the mortgage was a first lien on the boat. In fact, the mortgage was a second lien, for the assignor itself then had a maritime lien paramount to the mortgage, a fact unknown to the assignee of the mortgage. Having obtained the assignee's money on the representation that the mortgage was the first lien, the assignor was estopped to assert the priority of its own maritime lien then existing. The Ajax, 34 F.(2d) 45 (D. C. Me.). As between the parties the mortgage was the prior lien, and the estoppel available against the bankrupt was effective also against the trustee in bankruptcy. See Zartman v. First National Bank, 216 U. S. 134, 30 S. Ct. 368, 54 L. Ed. 418; In re Milne, 185 F. 244, 249 (C. C. A. 2).

█ There was a similar estoppel from the transaction of September 9, 1929. The bankrupt agreed for valuable consideration to turn over to the defendant the entire proceeds of sale of the vessel in case of default. Such an agreement would bar it from asserting the priority of any maritime lien then held by it. The mortgage was therefore superior in equity to the maritime lien as it existed on September 9, 1929, $3,145.83, as against the bankrupt and the trustee in bankruptcy. On the other hand, the items in the maritime lien that accrued after September 9, 1929, $733.89, were a first lien on

the vessel. As to these charges, no estoppel or other equity disturbed the priority ordinarily accorded to a maritime lien. The bankrupt was as free to furnish repairs to the vessel as an outsider would be. The order of priority of these liens on March 11, 1931, just before the bankrupt formally assigned the maritime lien to the defendant, was therefore this: First, the items totalling $733.89 of the maritime lien held by the bankrupt; second, the mortgage in the unpaid amount of $3,647.14 held by the defendant; third, the earlier items of the maritime lien aggregating $3,145.83, held by the bankrupt. Since the Eloise appears to have brought only a net sum of $1,304.03 applicable to payment of these liens, the practical situation is that the assignment of March 11, 1931, was preferential only to the extent that it covered the first lien of $733.89. Whether that preference was voidable turns on the presence or absence of insolvency and reasonable cause to believe. It does not appear from the pleadings in this case that any question of priority between the maritime lien and the mortgage was adjudicated in the suit to foreclose the maritime lien.

The first two defenses may therefore stand as partial defenses to the cause of action, first, on the theory of an assignment of part of the maritime lien made prior to four months before bankruptcy, and, second, on the theory that only the smaller part of the maritime lien was senior to the defendant's mortgage.

█ 2. By the third defense, pleaded as only a partial one, the defendant seeks to diminish the amount recoverable in any event by the expenses necessarily incurred by it in reducing the maritime lien to possession. It is stipulated that the defendant paid out $350 for counsel fees in foreclosing the lien, and that this expenditure was necessary and reasonable. I am of opinion that this partial defense is sound. In cases of voidable preference, what the trustee recovers is "the property or its value." Bankr. Act § 60b, 11 USCA § 96 (b). If the defendant still has the property on hand, the trustee regains it. National City Bank v. Hotchkiss, 231 U. S. 50, 59, 34 S. Ct. 20, 58 L. Ed. 115. If the defendant cannot restore the property, the trustee gets the value. McElvain v. Hardesty, 169 F. 31 (C. C. A. 8). Where the defendant has realized on the property and has obtained for it as much as the trustee could have obtained, he is chargeable only for the net proceeds of sale. Allen v. Mc-

812

Mannes, 156 F. 615, 622 (D. C. Wis.). In the instant case the defendant foreclosed the maritime lien and cannot restore it to the trustee in the form of a lien. If the transaction was a voidable preference, he is therefore chargeable with the value. But the value was not the face amount of the lien. If a stranger had purchased the lien for cash at the time of the transfer to the defendant, he would doubtless have deducted, from the amount he was otherwise willing to pay, the fee he would have had to pay a lawyer to foreclose and realize on the lien. Where choses in action are transferred preferentially and the transferee incurs necessary reasonable expenses in reducing them to cash, he may be held liable only for the net proceeds. This is the rule generally followed as to conveyances in fraud of creditors in cases where the fraud is only a constructive one. Colgan v. Jones, 44 N. J. Eq. 274, 18 A. 55; Loos v. Wilkinson, 113 N. Y. 485, 21 N. E. 392, 4 L. R. A. 353, 10 Am. St. Rep. 495. See also Saugerties Bank v. Mack, 35 App. Div. 398, 400, 54 N. Y. S. 950. The equity of a preferred creditor is stronger than that of a voluntary transferee.

The motion will be granted to the extent that the first two defenses, pleaded as complete defenses, will stand only as partial defenses. In other respects the motion will be denied.