SAMUEL M. STEWART, Appellee, v. SAMUEL W. TODD et al.,
Appellants.

HUSBAND AND WIFE:  Partnership Agreement That Survivor Shall
1  Have Property—Subsequent Will.  Partnership agreements between
a husband and wife are recognized as valid, but a clause in such
agreement to the effect that, on the death of one of the parties,
"the one living shall fulfill all contracts, pay all debts, and have all
property left or owned by either party or in the firm's name," will
prevail over a will (subsequently executed by the one first deceased)
*only as to the partnership property and its accumulations.*

ATTORNEY AND CLIENT:  Nonprivileged Transaction.  The testi-
2  mony of an attorney as to a transaction on which two parties con-
sult him for their mutual benefit is not privileged, in an action be-
tween said parties or their personal representatives, involving such
transaction.

WILLS:  Nonestoppel to Deny Validity.  A husband who fails to con-
3  test the probate of his wife's will, and even files his election not
to take thereunder, does not estop himself from subsequently setting
up a prior and superior right to the property by virtue of a valid
contract of partnership with the wife, under which contract the
survivor was to have all the property.

*Appeal from Van Buren District Court.*—FRANCIS M. HUNTER,
Judge.

JULY 10, 1919.

SUPPLEMENTAL OPINION DECEMBER 16, 1920.

ACTION in equity for the specific performance of an alleged
contract.  The opinion states the facts.—*Modified and affirmed.*

*W. D. McCormick, Sloan & Sloan, J. C. Calhoun,* and *W.
L. Birkheimer,* for appellants.

*J. C. Mitchell* and *Robert R. McBeth,* for appellee.

GAYNOR, J.—Samuel M. Stewart and one Emma A. Stewart were husband and wife. On or about February, 1881, they entered into a contract in writing. The original of this contract was not produced on the trial. Its absence was accounted for, and secondary evidence of its contents rightly permitted. From this evidence it appears that the contract so entered into was substantially as follows:

*1. HUSBAND AND WIFE: partnership agreement that survivor shall have property: subsequent will.*

"Contract entered into this ...... day of February, 1881, by and between Emma A. Stewart and S. M. Stewart, both of Van Buren County, Iowa, witnesseth:

"That said parties have agreed to start a general store under the firm name of E. A. Stewart, in which each party is to be an equal partner. S. M. Stewart is to transact and do all the business, sign the firm name of E. A. Stewart to any and all papers necessary; and all the property accumulated, purchased and owned by either party to be in the firm name of E. A. Stewart. Both parties to use any money they need, and at the death of either party the one living shall fulfill all contracts, pay all debts, and have all property left or owned by either party, or in the firm name."

Upon the execution of this contract, the parties thereto opened a general store at Mt. Sterling, Iowa, in the name of E. A. Stewart. The capital used in this enterprise was very small, but the larger portion of it was undoubtedly furnished by Samuel M. Stewart. From that time until 1894, the store was run in the name of E. A. Stewart, managed and controlled, so far as this record shows, by Samuel M. Stewart, Mr. and Mrs. Stewart both assisting in the purchase and sale of goods and in the conduct of the business generally. This proved a successful venture, and the close of each year found a large profit to the credit of the firm.

On the 25th day of September, 1894, the stock of merchandise and fixtures in this store were sold to Madden & DeHunt, the contract reciting "that E. A. and S. M. Stewart have this day sold to Madden & DeHunt their stock of merchandise and fixtures, situated," etc., describing the location. The consideration paid was $3,000. The exact amount is not clearly ascertainable from this record.

On February 28, 1894, before the sale of this stock and while the store was being operated under the contract aforesaid, Emma A. Stewart and S. M. Stewart entered into a written contract with one John Gwinup for the purchase of 196 acres of land for $6,550. This contract was signed by Emma A. Stewart and S. M. Stewart. In the consummation of the contract, the deed was made on June 2, 1894, to Emma A. Stewart. The original deal was made by S. M. Stewart, and the preliminary contract signed by both. The purchase price was paid with partnership money, the proceeds of accumulated profits during the continuance of the business. The record affirmatively shows that, up to this time, neither party had any source of revenue except that which came from this partnership venture. There is some suggestion that Mrs. Stewart may have received money from her father, but there is no substantive evidence of this fact, and therefore we say that the record discloses that this land was purchased and paid for out of partnership funds.

Soon after the purchase of this land, Samuel M. Stewart and his wife took possession, and thereafter continued to occupy it as their home farm until the death of Mrs. Stewart. The land is referred to in the record as the home farm.

After the purchase of this farm, it was managed and controlled by Samuel M. Stewart. Stock was purchased by him and placed on the farm. In fact, he had the full management and control of it. The farm also proved profitable, and, in the course of time, other lands were purchased, and title taken in the names of E. A. Stewart and Emma A. Stewart, a detailed description of which is not necessary to the determination of the matters involved in this suit. But the record discloses that, after the sale of the store, there was no source of revenue to these parties except that which came as profits from this farm venture. In fact, all property the legal title to which stood in the name of Emma A. Stewart or E. A. Stewart, at the time of the death of Mrs. Stewart, on September 9, 1913, was purchased from accumulated profits arising from the original enterprise started by these parties under the contract of partnership made in 1881, and is traceable to that enterprise, except the lands conveyed to Emma A. Stewart in 1896 by her father and mother. The record of these conveyances is found in Book

59, pages 108 and 109 of the Clark County records of the state of Missouri, and in Book 36, page 66, of the Van Buren County records of this state. There seems to have been no consideration paid for either of these pieces of land, either by Mr. or Mrs. Stewart.

The plaintiff, however, does not rely upon a claim of partnership as a basis for the relief sought in this case. He bases his claim of right to all the property, whether in the name of E. A. or Emma A. Stewart, on the claimed binding force of the original contract, entered into in 1881, providing "that, at the death of either party, the one living shall fulfill all contracts, pay all debts, and have all property left or owned by either party, or in the firm name," supplemented by two reciprocal wills, executed on the 1st day of May, 1896.

The existence of the partnership is only an incident, and not the basis on which plaintiff rests his right to relief in this case. The rights he seeks to enforce are based upon the original, written contract of partnership, entered into in 1881, supplemented by the two reciprocal wills executed on the 1st day of May, 1896. It is claimed that the formation of the partnership, the investment of money in the partnership, and the subsequent investment of the earnings of the partnership in land, in the name of one of the parties, show a consideration for a performance of and such reliance on that contract that its binding force and legal efficacy, supplemented by the wills aforesaid, cannot be avoided by the acts of one of the parties to it, without the consent of the other.

In May, 1896, Mr. and Mrs. Stewart went to the office of William M. Walker, a practicing attorney in Van Buren County. They had with them at that time the original contract of partnership, hereinbefore set out. It was submitted to Mr. Walker for examination. He read it. He said:

"The contract was handed to me, and I was asked to read it and give my opinion as to whether or not it was a valid and binding contract. After an examination, I said to them that, in my judgment, it was a valid and binding contract, and that I would advise that she and her husband each make a will in favor of the other, and then, in my judgment, the contract and the wills would be binding and valid. At that time, Mrs.

Stewart's father and mother and husband were all present. Mrs. Stewart said, at that time, that it was her thought and her husband's that she would, in all probability, outlive him, and they wanted to know whether the contract would have the effect of giving to her, in case of his death, all their property; and wanted to know, in case of her death, would it have the same effect as to him. They expressed the desire that, in case of death of either of them, the other should have all the property which they owned at the time. Thereupon, I prepared two wills, one for each. They were exactly alike, except that Mrs. Stewart made a special bequest of her watch to one of her nieces.''

After the wills were executed, they discussed between themselves a place of deposit. They concluded, however, to deposit them with the clerk of the district court, on Mr. Walker's suggestion. The will executed by Samuel M. is substantially as follows:

''I will and bequeath that all my just debts and funeral expenses be paid.

''2d. After the payment of my debts and expenses, I will, devise and bequeath all my property, both real and personal, of whatever kind and wherever situated, of which I may die possessed, to my beloved wife, Emma A. Stewart.''

Mrs. Stewart's will was the same, except as to the devise of her watch to her niece, and devised all the property of which she died seized to Samuel M. Stewart. These reciprocal wills were deposited with the clerk of the court, but were subsequently taken from his custody and placed in a receptacle, to which both parties had access, in the home of Mr. and Mrs. Stewart. So far as Samuel M. Stewart knew, or had reason to know, they remained there and were there at the time of the death of Mrs. Stewart. Upon the death of Mrs. Stewart, however, it developed that, on the 17th day of August, 1907, Mrs. Stewart executed another will, in which she revoked and canceled any and all former wills made by her, and undertook to and did make a disposition of her property inconsistent with the provisions of the reciprocal will heretofore referred to. It is this will that provokes the controversy. This will was produced and duly probated, and under this will claims are being urged, antagonistic to the claims of plaintiff in this suit.

This is the record on which the rights of the parties in this suit are to be determined.

Before coming to the real merits of the controversy, we have to say that the contract relied upon was one which the parties had a right to make. There is no statutory inhibition against the making of such a contract, and, when it rests upon a good consideration, it is enforcible. A married woman can contract freely with relation to her own property. The inhibition of Code Section 3154 relates only to trafficking in her inchoate right in the property of her husband. *Baker v. Syfritt*, 147 Iowa 49. That she had a right to enter into a partnership with her husband and carry on a partnership business, the same as a stranger might do, has been settled by the decisions of this court. *Hoaglin v. Henderson & Co.*, 119 Iowa 720.

As said before, the original written contract of partnership was not produced. Its contents are proven by the testimony of Mr. Walker, to whom it is claimed it was submitted, at the time the reciprocal wills were drawn. Both parties were present at that time. It was submitted to him for a legal opinion, at the request of both parties, and in the presence of the father and mother of one of the parties; and it is claimed that what was said is privileged, under the statute. This position cannot be sustained. The privilege does not apply to cases where two or more persons consult an attorney for their mutual benefit. *Mueller v. Batcheler*, 131 Iowa 650, 653.

*2. ATTORNEY AND CLIENT: non-privileged transaction.*

It is claimed that the contract is testamentary in its character, at least in so far as it purports to give to her husband all property left by Mrs. Stewart at the time of her death; and that, being testamentary in character, and not executed as the law requires testamentary instruments to be executed, it cannot be enforced.

It is true that as a testamentary instrument it cannot be enforced, but an agreement to leave property to another, resting upon a consideration, is valid and binding, and will be enforced by the courts. In *Mueller v. Batcheler*, 131 Iowa 650, the facts were that one William C. Knight executed and delivered to his wife a deed to certain real estate and a bill of sale to certain personal property; that, as part of the same transac-

tion, Mrs. Knight executed and delivered to William C. Knight a deed to all the real estate of which she was then owner. The mutual agreement between them was that the survivor of them, on the death of the other, was to own all the property, that the deed executed by the survivor was to be destroyed, and that the survivor should give, by deed or by will, all the property which such survivor should own, at the time of his or her death, to the plaintiff in the action, the consideration of each deed being the mutual promise of the other. William C. Knight died intestate. His wife also died intestate. At the time of her death, she was the owner of all the property claimed by the plaintiff in the action. Plaintiff brought an action against her heirs to recover the property. The court below granted him the relief prayed for, and this court affirmed the action.

As said in *Baker v. Syfritt*, 147 Iowa 49, 55:

"It has often been held that an agreement upon sufficient consideration to make a will is valid, and that, upon breach of such promise, the beneficiary thereof has a right of action for damages, or, under some circumstances, may enforce specific performance. And the person coming into the possession of such property otherwise than as an innocent purchaser is held in equity to be trustee thereof for him to whom it ought of right to have been devised."

See *Carmichael v. Carmichael*, 72 Mich. 76 (40 N. W. 173). In this case, it is held that, where a husband and wife bind themselves to make a particular disposition of their property by will, and such contract is fully performed on the part of the husband, and the benefits received and accepted by the wife, equity will prevent the wife from violating her part of the contract in fraud of parties interested; and that, if a conveyance is made by her, after the death of her husband, in violation of her agreement, the conveyance may be set aside, at the suit of the parties for whose benefit the agreement was made. See, also, *Teske v. Dittberner*, 70 Neb. 544 (98 N. W. 57).

This doctrine has been quite generally recognized by the courts, to wit, that, where one makes a valid agreement, resting upon a sufficient consideration, to dispose of his property by will, such agreement may be enforced, after his decease, against his

heirs, devisees, or personal representatives.  A part performance of an agreement to make a particular disposition of property by will takes it out of the operation of the statute of frauds. *Dicken v. McKinley,* 163 Ill. 318 (54 Am. St. 471) ; *Johnson v. Hubbell,* 10 N. J. Eq. 332 (66 Am. Dec. 773) ; *Burns v. Smith,* 21 Mont. 251 (69 Am. St. 653).

In *Turnipseed v. Sirrine,* 57 S. C. 559, it was held that, if two persons make an oral agreement to make mutual wills, and one of them, in execution thereof, bequeaths to the other, who subsequently dies without making a will, a legacy of $10,000 and the residue of her estate, this is such a part performance of an agreement on her part as takes the case out of the statute of frauds, and permits the agreement to be proved by parol, and authorizes a decree against the heirs of the deceased to the effect that the party who has made her will is the equitable owner, and entitled to be clothed with the legal title to all of the property which she would have received, if the will of the other party to the agreement had been made.  See, also, *Allen v. Bromberg,* 147 Ala. 317 (41 So. 771).

If, therefore, it can be said to be the rule that one can make an agreement in writing or in parol, without executing it in the form required in the execution of testamentary instruments, and bind himself by such agreement to give his property, upon his death, to another, and that such agreement can be enforced after the death of the promisor, provided it is shown that the agreement rests upon a valid consideration, there can be no logical reason for holding that, where one makes such a contract, resting upon a consideration, and thereafter, in pursuance of the contract, makes a will for the purpose of making more effectual this agreement and promise to make the will, the original contract becomes less binding upon him.

We are met, however, with the proposition that, before the death of Mrs. Stewart, she revoked the reciprocal will by executing another will, disposing of her property to the defendants in this suit.  Now, of course, this reciprocal will could not be probated. She had revoked it. The revocation destroyed the right to probate, but the contract still remained, and the last will, being probated, gave no added right by its probation.  It simply pointed out and designated the persons who were appointed

in her stead to perform the contract made. The will undoubtedly passed the property to these parties named in the last will, but they took it impressed with a trust, in favor of the party to whom the promise was originally made.˙ Courts of equity, considering that done which ought to be done, will enforce the original contract by impressing a trust on the property received under the second will, in favor of the original promisee.

Inasmuch as their original contract rested on the mutual promise of the contracting parties, carried out and recognized by the making of reciprocal wills, it cannot be rescinded, except by the consent of both. As it takes the mutual consent of both to make a contract, so it takes the mutual consent of both to rescind or destroy the contract.

We have said that the promise must rest upon a consideration. A promise made upon a consideration binds the promisor and promisee. What is the consideration for the promise made in the contract executed between these parties in 1881, and what was the consideration for the mutual promise made in the reciprocal will?

It appears that all the property, except that which came from the father and mother of Mrs. Stewart, is simply the product of the growth and development of the original business, entered into at the time the contract was made. The money used in purchasing the Gwinup farm was the money of the partnership. The title to it was taken in the name of one of the parties. It was purchased at a time when the commercial enterprise was still in operation. It belonged to the partnership, and, upon the dissolution of the partnership, if there was any dissolution, the property became the joint property of the partners. It was managed and controlled by the husband. The record shows that practically all the business that made the farm profitable was done by him. The proceeds of this joint property were invested in other property, and this continued to be the joint property of these parties. After the purchase of this Gwinup farm, Mr. and Mrs. Stewart made their visit to the office of William M. Walker. The original contract was then exhibited to him, and recognized by them as a then binding contract between them. This was after the sale of the store, and after the purchase of the Gwinup farm. The husband continued to recognize the con-

tract as binding, and labored in the interest of the joint enterprise, giving his time and attention and money to make it effectual and profitable. Without his consent, and without notice to him, his wife, on the 17th day of August, 1907, made her will, in which she attempted to revoke, and we may assume did revoke, the reciprocal will made in 1896, and undertook to relieve herself of the obligation of her contract, without the knowledge or consent of Mr. Stewart. This will was admitted to probate. Mr. Stewart filed an election not to take under the will, and brought this action, in which he claims to be the owner of all the property left by the deceased at the time of her death, unaffected by the provisions of this later will. The court below found in his favor, and we think rightly so, for the reason that the original contract and its agreements therein, supplemented by the reciprocal wills made later, became and are as one contract, binding upon both parties, and not revocable by either. *Brown v. Webster*, 90 Neb. 591 (134 N. W. 185), supports this conclusion, and is such a full and fair discussion of the question involved in this suit that we invite a careful reading of it. See, also, *Keith v. Miller*, 174 Ill. 64 (51 N. E. 151).

The record in this case discloses that the plaintiff devoted the best years of his life to the performance, in good faith, of the original contract entered into in 1881. For 13 years, a mercantile business was carried on in the name of E. A. Stewart, a name agreed upon under which the partnership business should be transacted. So far as this record shows, the entire accumulation of these years was invested with his consent, and in reliance, no doubt, upon the original contract, in lands in the name of his wife. After much of this land had been purchased and taken in the name of his wife, they together consulted Mr. Walker. Some question had undoubtedly arisen in their minds touching the legal efficacy of the contract. They both recognized it as binding upon them, if enforcible at law. To make sure that the contract was binding, they applied to Mr. Walker. He informed them then that the contract was legal and of binding efficacy upon both, and suggested that, to avoid any doubt as to the legal efficacy of this contract, reciprocal wills should be made. These reciprocal wills were made, undoubtedly, for the purpose of making more effectual and more fully evidenc-

ing the agreement made in the original contract. They could have been made for no other purpose, so far as Mrs. Stewart was concerned. The property at that time was all in her name. So far as Samuel was concerned, the will and contract remained in full force, with all the legal efficacy that attached to it, up to the time of the death of his wife. It was then, for the first time, that he discovered that she had attempted to repudiate her obligation, and to assume to be the owner of all the property in her own right, and to make disposition of it accordingly. We may assume that she revoked her reciprocal will to the extent that it could not, upon her death, be admitted to probate; but the contractual rights which the contract and the will created could not be destroyed by her act, without the consent of her husband. Therefore, the rights of the plaintiff in this suit rest upon the agreement evidenced by the original contract of 1881, of which the reciprocal will, attempted to be revoked, was a part, by mutual consent of both parties, as evidenced by the testimony of Mr. Walker.

While it is true that any effort at a testamentary disposition of property can be made effectual only by following the statute governing the making of testamentary instruments, yet it does not follow that two parties cannot make an agreement, upon consideration, touching the disposition of the property of each upon the death of either. If such contracts were not binding upon the parties, no suit could be maintained for a breach thereof; and yet this court has recognized the right to maintain actions as for a breach of such contracts, and damages have been recovered. Equity may enforce a contract, a breach of which might be the foundation of a civil action for damages. It will not always do so, but it lies in the power of the court to do so. *Chehak v. Battles,* 133 Iowa 107; *Stiles v. Breed,* 151 Iowa 86. In this case, plaintiff claims that a contract was entered into, by the terms of which he was to live with decedent until attaining his majority, and, upon decedent's death, he was to take all his property, as though his own son. The court said:

"That a contract such as alleged may be enforced was decided in *Chehak v. Battles,* 133 Iowa 117. There the contract was in writing, while in this case oral evidence is relied on. The only difference is in the manner of proof. Such an agreement,

if resting in parol, must be fully established by clear, satisfactory, and convincing evidence.''

The evidence is conclusive that plaintiff complied with all the terms of his alleged agreement. The court found the contract was enforcible, and enforced it against the heirs of the deceased. See, also, *Horner v. Maxwell*, 171 Iowa 660.

It is argued, however, that the contents of this original instrument are proven, if at all, by parol testimony. The right, however, rests upon a written instrument. The proof of the contents of the written instrument is by parol. We say the proof of the contents leaves in our minds no doubt of the existence of the original contract and of its contents, as claimed by the plaintiff. The proof of the contents was made by a lawyer skilled in his profession, to whom the original instrument was submitted for advice, submitted by both parties, and its contents examined, for the purpose of giving advice as to its efficacy as a legal document. It was read carefully by the lawyer, and, upon reading, the advice was given which resulted in the preparation of the reciprocal wills. The existence of the original contract was fully proven, its contents were fully proven, and this justifies us in saying that the writing was substantially as hereinbefore set out. The loss of the contract was fully accounted for. Search was made in every place where the contract was likely to be. While there is some statement in plaintiff's petition that it might be in the hands of White, White was on the stand, and denied that he ever had possession of it. It seems to be conceded by the defendant that the loss of the contract was fully proven. Further, the objections first urged to the instrument as a copy were withdrawn by the defendant, and no point is made in defendant's brief points as to the sufficiency of the evidence to show that the contract was lost, and not within the power of the plaintiff to produce.

It is urged in argument that, because the plaintiff did not oppose the probate of this last will, and filed his

**3. WILLS: non-estoppel to deny validity.** election not to take under the will, he is estopped to claim that the will was not efficacious, as an instrument disposing of all rights which he might have urged under the original contract, now sought to be enforced.

This contention is not sound, inasmuch as it was his duty, under the law, to file the will with the clerk for probate. There is a penalty for suppressing it. Section 5043 of the Code of 1897. It is the duty of the clerk to fix the date for proving it. On a hearing, the only issue is: Is the instrument the last will and testament of the decedent? Was she of sound mind when she signed it, etc? It is probated or proven when this is shown. A husband cannot contest the will of his wife. If he does not care to take under the will, he can file his election not to take under the will. In filing his election not to take under the will, no matter what its provisions are, he receives the same share in his wife's estate as he would receive, had there been no will. No matter what the provisions of the will are, when probated, it confers no rights in property not owned by the testator at the time of her death, and in no event could it be made to avoid contractual obligations assumed during her life. There is no estoppel shown in this case. No prejudice resulted to any of the contesting parties as a consequence of the silence, or even active participation, of the plaintiff in the probate of this will. It is only a circumstance tending to show, if anything, that he consented to the revocation of the original reciprocal will; and it is our opinion that it has no such tendency, under the record in this case. The will neither negatives nor affirms the ownership of the property mentioned in the will, against the rights of third persons. The court below in its decree found in favor of the plaintiff, and adjudged him to be the owner and entitled to all the property owned by Emma A. Stewart at the time of her death, except the watch and chain referred to in her reciprocal will hereinbefore set out, and decreed specific performance of said contract.

There are other questions discussed, but they do not reach the merits of this controversy. On the whole record, we think the court was right in its decree, and the cause is—*Affirmed.*

LADD, C. J., WEAVER, PRESTON, and STEVENS, JJ., concur.

### Supplemental Opinion.

Per Curiam.—Upon further examination of the record, we have reached the conclusion that the contract entered into by Stewart and his wife should be construed as one of partnership, and as having relation only to property which might be invested therein in the prosecution of its business, and the profits, together with its earnings, investments, and to profits derived therefrom. In this view, the farm of 136 acres acquired by Mrs. Stewart from her parents in the distribution of their estate would not be included in that passing, under the contract, to Stewart upon her death, but would descend under the general law or will; but what disposition shall be made thereof is not adjudicated in this action. The reasons for this conclusion appear in the first two paragraphs of Judge Evans' dissent to the main opinion. With this modification, the petition for rehearing is overruled, and the decree as so modified is affirmed.

Evans, J. (dissenting in part from the main opinion). I. I cannot wholly agree with the majority opinion. The property involved in the controversy falls into two classes: (1) The alleged partnership property; (2) the property acquired by the wife, independent of the partnership, from her parents in the distribution of their estate.

I do not think that these properties upon this record can be deemed to fall into hotchpot, nor that the facts of this record decisive as to one are decisive as to the other. The contract pleaded was as follows:

"Contract entered into this ———— day of February, 1882, by and between Emma A. Stewart and S. M. Stewart, both of Van Buren County, Iowa, witnesseth: That said parties have agreed to start a general store under the firm name of E. A. Stewart, in which each party is to be an equal partner. S. M. Stewart is to transact and do all the business, sign the firm name of E. A. Stewart to any and all papers necessary; and all the property accumulated, purchased and owned by either party to be in the firm name of E. A. Stewart. Both parties to use any money they need, and at the death of either party the one living shall fulfill all contracts, pay all debts and have all property left or *owned by either party,* or in the firm name."

This alleged contract was not produced at the trial; neither was a written copy of it offered; nor did the proof offered purport to be anything but an approximation or substance of the contract. It will be noted that the claim of the appellee to the 136 acres of land acquired by his wife from her parents as a distribution of their estate rests wholly upon four little words, which we have italicized above. If these words were eliminated, there would be nothing left to the appellee as a basis for any claim to the ownership of such land. Is the evidence clear and convincing that these little words were contained in the alleged lost contract? The method adopted for the proof of the contents of the alleged lost contract was a very vague one. The purported copy set forth in the pleading was formulated by the pleader; not by the witness. This pleading being presented to the witness Walker, the following question and answer appear in the record:

"Q. I will ask you to examine that portion of the first page of the original petition in this case, and which we have inclosed in pencil lines, and state whether or not, as you recollect it, that is substantially a copy of the contract that was exhibited to you that day by Mrs. Stewart, and on which you gave her the advice you did, and prepared the wills which you have testified to have prepared. A. I could not from my recollection give the contents of that paper, only in a general way. This paper agreed [inclosed] in the parentheses on the first page of the original petition is as near my recollection of it as I can give now; and I think it is my opinion that the date 1882 in this,—I think it was a year earlier, 1881. Now I do not say that to be sure. I think it was 1881, from my recollection of the contract, and perhaps more from my knowledge and of their business and from the conversation there that day; and from that I think this is incorrect as to its date, although it may be correct as to its date; but the contents of this is as near my recollection of what that contract was as I can give it."

A similar question was put to the plaintiff as a witness, which resulted in a similar answer. This is the entire evidence on the question of the actual contents of the lost paper. No attention was directed to particular words. The witness Walker frankly concedes:

''I could not from my recollection give the contents of that paper, only in a general way. This paper is as near my recollection of it as I can give now. * * * This is as near my recollection of what that contract was as I can give it.''

He was testifying to his recollection of the contents of a paper read 20 years before, which had been completely forgotten by him for many years. Can it be said that this general and approximate recollection by the witness of the contents of this paper is clear and convincing evidence that the paper contained the four words above italicized, upon which the title to the 136 acres hangs? I cannot think so.

II. If we had the exact terms of the alleged contract before us, it might present a question of construction. If the exact terms were those set forth by the pleader, it would present such a question of construction. I am of the opinion that the contract presented by the pleader should be construed as referring solely to the fruits of the partnership. It will be noted that the subject-matter of that contract is the partnership affairs. Primarily, it is a contract of partnership, whereby the parties propose to engage in business, and whereby they declare each other's rights in the fruits to be realized. Under the evidence, they did engage in partnership upon a capital of $215. The earnings of this partnership while they were engaged in the mercantile business amounted to several thousand dollars, and this was invested in lands, title to which was taken in the name of one of the partners. Assuming, therefore, that this contract extends in its application to all such fruits of the partnership, is it not a forced construction thereof to say that it includes also matters that were entirely foreign to such partnership, and foreign to the contemplation of the parties at the time that the contract was entered into?

If it be thought that the question of construction is close as to the four words referred to, then the doubt ought to be solved against the appellee, because of the great weakness of his proof that the particular words which create the doubt were contained in the contract at all.

III. I think, also, that Code Section 3154 is an impediment in the way of appellee to claim that the contract can operate upon the individual property of the wife, acquired independ-

ently of the partnership. Under this section it is provided that neither husband nor wife has any interest in the property of the other which can be the subject of contract between them. The majority opinion has dealt with this question rather briefly, and has considered the application of the rule only as to partnership property. We have held that husband and wife may enter into partnership, and that they may contribute their individual property to the partnership. We have held, also, that the necessary effect of such a course is to withhold the inchoate right of dower in the partnership property, and that the entire partnership property thus contributed becomes liable to the call of the partnership. *Baker v. Syfritt*, 147 Iowa 49. I am not, therefore, claiming that Section 3154 is an impediment to the operation of this contract between husband and wife in so far as it is construed to apply only to partnership property. I claim only that it is an impediment to an application of the contract to the individual property of the wife, treating the contract, as appellee does, as the equivalent of an agreement by the wife to make a will conveying all her property to her husband, subject to her debts. The completion of such an agreement depends upon the valid acceptance thereof by the husband. An acceptance by the husband would mean nothing else than that, after the death of the testatrix, he would waive his right to dower, and would take under the will, even though all the property might be absorbed in the payment of the debts of the testatrix. Of course, on first impression, it would seem that, where a husband or wife leaves all of his or her property to the surviving spouse, the benefits are one-sided, and operate necessarily to the advantage of the surviving spouse. But such is not necessarily the case. To put the question briefly, could a husband and wife enter into contract during their lifetime whereby the husband agreed to leave all the property to his wife, subject to his debts, and whereby she agreed to accept under such will and to waive dower? It might appear, at the time of the making of such contract, greatly advantageous to the wife, in that the property of the husband was greatly in excess of his indebtedness. Can the wife elect in her lifetime to waive dower, and take under the will of her husband? Can she make a binding contract, in advance of the death of her hus-

band, to so elect after his death? Does not this section of the statute say, in express terms, that this right is not the subject of contract between them? Indeed, we have so held. *Berry v. Donald,* 168 Iowa 744. The prohibition of the statute, if it applies at all, necessarily applies to advantageous contracts, as well as to disadvantageous ones. The application of this statute, therefore, furnishes a further reason why the contract should be construed as I have already contended, to apply only to partnership property.

IV. I think that there is much in the conduct of the plaintiff, pertaining to the probate of the will and the appointment of an executor, which was wholly inconsistent with his present claim that he already owned *all* the property devised in the will. I can see how he might have claimed the ownership of some of the property, and yet claim the benefit of the devise in the will as to other property; but his conduct was wholly inconsistent with his present position that he held *all* the devised property by a superior right. He obtained the will from its custodian, and presented it to the court, with a verified petition for its probate. He asked and obtained the appointment of an executor other than the one named in the will. The executor thus appointed upon his application was Tobin. White, who was named executor in the will, appeared, and showed his competency to act, and asked that the appointment of Tobin be set aside, and that he be appointed, pursuant to the terms of the will. This application by White was successfully contested by the plaintiff. He had not, at that time, disclosed his present contention. If he had, he would have appeared without direct interest, either in the probate of the will or in the appointment of the executor. In contesting the removal of Tobin, he was simply saving his antagonist. He had no other interest in the question, except the selection of an antagonist. It is said that he was bound to file the will, under the mandate of the statute. This mandate applies to the custodian of the will. The plaintiff was not the custodian. He obtained it from the custodian. He had a right to return it to him. In applying for immediate probate of the will, he averred that there would be no contest thereon. The opinion treats this conduct on the part of the plaintiff as a mere question of estoppel *in pais*. It is not such. It has to do with

that rule enforced by the courts, that a litigant who, by assuming a certain attitude, obtains orders of the court in furtherance of his claim may not thereafter adopt the contrary attitude, and obtain relief inconsistent with his first attitude.

V.   I think the evidence is sufficient to establish the contract of partnership between husband and wife.   As against this, it is claimed that the contract, if entered into, was covinous, and therefore void, as tending to defeat the creditors of Stewart. Stewart was insolvent.   The burden of proving its alleged character as a covinous contract is upon the appellants.   They introduced evidence that the money for starting the business was furnished by the wife.   This is their contention in argument. It is quite destructive to the charge of covin.   If she furnished the money for the capital of the partnership, no fraud was perpetrated upon the creditors, so far as the formation of the partnership was concerned.   As to whether, notwithstanding this fact, Stewart may have intended to conceal from his creditors his profits earned in the firm, a somewhat different question is presented.   The evidence does not deal with it, except as inference might be drawn from the circumstances.   The fact remains that the interest of Stewart was subject to the appropriation of creditors at any time.   The existence of the partnership was not wrongful.   Nor is there any evidence that the fact of partnership was actively concealed or denied by Stewart at any time. The evidence on this question simply is that the fact of partnership was not generally known.   I think, therefore, that the charge of covin is not sustained.

I do not think that the fact that the parties sold their store in 1894 was necessarily a dissolution of the partnership.   It was entirely competent for the parties to continue in partnership to handle the proceeds of the sale of the partnership property. If they invested the same in the 196-acre farm, and took the title in the name of one of the partners, I see no reason why the farm should not be deemed partnership property.   It is urged that, the husband having negotiated for this farm, and taken the title in the name of his wife, Emma A. Stewart, and not in the partnership name, E. A. Stewart, this created the presumption of gift to the wife.   It was not necessary that the title should be taken in the name of the firm.   Indeed, we should

take judicial notice that it is quite customary for a partnership to take title to real estate in-the name of a partner, rather than in the name of the firm, in that it often avoids complexities in the record chain. This is not a case where a husband bought land with his own funds, and took the title in the name of his wife. In such a case, the presumption of gift would obtain, as contended by appellants. It is a case where a partnership, through one of its members, bought land with the partnership funds, and took the title in the name of the other partner. It is universally held, in such a case, that the grantee thus named is presumed to hold the title in trust for the partnership.

I reach the conclusion, therefore, that the plaintiff was entitled to impress a trust upon this farm, as being held for the partnership; and that this is so, also, as to other lands paid for with partnership funds, including the Todd-Buckles lands and some town lots. I see no legal obstacle to the indefinite continuation of this partnership in the management of the farm business. This conclusion would entitle the plaintiff to one half of all such property as owner, and to one half of the other half, as surviving husband of his wife. I think he would be entitled to relief along that line.

If, however, he is permitted to take *all* of the alleged partnership property, it must be by virtue of the terms of the contract pleaded. Can the contents of the contract be deemed proved, to the extent of its application to the partnership property? I think that the evidence in that respect has much more corroboration in the circumstances, as well as in its reasonableness and probability, than does the evidence pertaining to the individual property of the wife. I cannot avoid doubt of its sufficiency, even in this respect. I am not disposed, however, to interpose my mere doubt as a basis of dissent on this point from the settled judgment of the majority.

I dissent, therefore, from the opinion of the majority as regards the 136-acre farm acquired by Mrs. Stewart from her parents in the distribution of their estate. In other respects I concur.

SALINGER, J. (dissenting from the main opinion). I. Something should be said upon the admission of secondary evi-

dence to prove the contents of the alleged lost written contract. The majority opinion has the statement that:

"The original of this contract was not produced on the trial. Its absence was accounted for, and secondary evidence of its contents rightly permitted."

Again:

"The loss of the contract was fully accounted for. Search was made in every place."

This surely treats the right to introduce secondary evidence as being a question in the case. So treating it, I point out, among other reasons for holding that no sufficient foundation was laid, the following allegation of the petition: Plaintiff "has not access to the alleged contract, because he has no copy of it, and does not know of any copy within the jurisdiction of this court. He does not know whether the alleged contract has been destroyed or not, and if not destroyed, he does not know in whose hands it now is; but he believes it is in the possession of Matthew White, one of the defendants, and who resided in the state of Texas." I argue that, since White was a party to the suit, filed answer, and testified on the trial, and since plaintiff pleaded that he believed the original of the alleged lost contract to be in the possession of White, it was error to receive secondary evidence of the contents of that paper, until it was determined, by the examination of White or some other method available, that the belief of the plaintiff that White had the paper was unfounded. These statements on my part carry the inference that White had not been examined upon' the point; and when I made them, I mistakenly believed that this was so. The majority opinion still retains its ruling that secondary evidence was rightly received, and so its inferential holding that that question is in the case. But it has added, in effect, that the testimony of White shows that he did not have the paper. It is further stated, in effect, that the objection of insufficient foundation was abandoned on the trial. I am unable to agree to either position. It is true, as said, that White was examined on the point, but the examination was this:

"Q. You have heard Mr. Walker's testimony with reference to the alleged contract of partnership,—did you ever have a contract of that kind or anything like it in your possession?

A. No, sir, I never did,—never knew of it until this suit. Q. In all your conversations with Mrs. Stewart, did she ever mention a contract of that kind? What would you say as to whether or not she would have mentioned such a contract, if such a contract ever had existed? A. Well, I would have thought she would. Of course, she might not. Q. You say that you never had in your possession a contract like Mr. Walker spoke of in his testimony with reference to the alleged partnership? A. No, sir, I never did."

This, true enough, settles that White never had a paper containing what Mr. Walker's testimony says it did contain. But it is not a statement that he did not have in his possession a paper dealing with the partnership, but which did not contain the particular stipulation upon which the plaintiff relies, and to which Mr. Walker testifies. I am of opinion, therefore, that, notwithstanding this testimony, secondary evidence should not have been permitted. As to abandonment of the objection, one objection to testimony by Walker, made, was:

"We make the further objection as to the contents of that paper, because there is no evidence sufficient of its loss or destruction, or that the original cannot be produced."

Later, plaintiff offered in evidence a part of the original petition included in pencil parentheses—the part which sets up the survivorship feature of the contract. Objection was made to this, which does not include want of sufficient foundation, and, later, counsel for the defendant stated:

"We will withdraw any objections made to the inquiries on account of it being a copy of the original."

It will be noticed that nowhere was a withdrawal of the objection that was made when Mr. Walker was being examined, to wit, the objection "as to the contents of that paper, because there is no evidence sufficient of its loss or destruction, or that the original cannot be produced." The withdrawal relates solely to the needless offer of a part of plaintiff's petition. Same was in the record without offer in evidence, and offering it in evidence would add nothing to the force of the pleading. If there was a concession that the alleged copy set out in the petition contained what the original did, there would be no occasion for most of the majority opinion. Had it been conceded that the

petition was a true copy of the original contract, this court need have spent no time in considering whether the testimony of Mr. Walker proves the contents of the original: there would have been no occasion to say "its contents are as fully proven and as clearly made known as though the written instrument itself were before the court." The case would have come to an end, in the trial court and here, on the one proposition that defendant had conceded that the copy pleaded in the petition was as good as the original.

In the same opinion which treats the question of foundation in the case comes the final amendment that the brief points for the appellant do not present this question. I find, upon examination thus suggested, that this is so. For that reason, I have no more to say on the question of secondary evidence, except that the majority should dispose of the reception of that testimony upon the one ground that the brief points do not raise the question.

II. In the main, the majority states clearly enough that plaintiff may not recover in this suit unless he has proved the contract he has pleaded; also, that the contents of that contract "are proved by the testimony of Mr. Walker," and so only. It should be said, in passing, that this clarity is not maintained throughout; and there are statements in the opinion from which it can be gathered that plaintiff can prevail though he has not proved the very contract alleged, and that things other than the testimony of Walker have made that proof. Three illustrations of this confusion of thought are typical and illustrative. It is unnecessary to advert to more, and any attempt to keep this dissent at reasonable length forbids so doing. The three illustrations are these: A large part of the opinion is devoted to a demonstration that such a contract as is asserted is valid and enforcible. I agree, and shall later use its validity as an argument. But I cannot understand how the fact that a given contract would be valid *if* made dispenses with proof of its existence, and contends against a denial of its existence. Time and again the thought is expressed that the making of mutual wills by the parties will permit plaintiff to recover, even if he has not proved the contract he has pleaded. Again, much stress

is laid upon the alleged fact that money belonging to both husband and wife bought the property in controversy, and that such property was put in the name of the wife. Neither the making of the wills nor so buying and placing the title of the property in the least dispenses with proving the contract pleaded. If the contract is not what is pleaded, the wills are of no avail, because they are revocable, and revoked by a later will made by the wife. It is universally held that mutual wills, whether joint or several, are revocable by either testator during the lifetime of the other, so far as his disposition of property is concerned, without notice to or consent of the other, unless the making of the will is the result of a valid contract, by which each has agreed to devise his property to the other. 1 Underhill on Wills 19, Section 13; *Robertson v. Robertson* (Notes IV and VI), 136 Am. St. 596, 604; 30 Am. & Eng. Encyc. Law (2d Ed.) 621; *Edson v. Parsons*, 155 N. Y. 555 (50 N. E. 265); *McClanahan v. McClanahan*, 77 Wash. 138 (Am. Ann. Cas. 1915 A 461, 463). The plaintiff himself recognizes this situation, because he pleads that the said reciprocal wills "were executed in confirmation and consideration, as well as supplemental to the written contract set out in the original petition." So the pleader concedes that the wills are not material until the alleged contract has been established. The will is available only if it was so executed. A will cannot be a confirmation of, supplemental to, or supported by the consideration of, a contract, if no contract existed. Without the contract, the plaintiff gets no "rights," except such as belong to a claimant under a revoked will. If the contract is proved, he gets all the property, though there be no will. Without the contract, the will gives him nothing. It follows that the existence of the will cannot dispense with proving the contract pleaded.

If it be necessary to establish the contract, neither its existence nor the fact that the will is made pursuant to and in consideration of the contract are established by proving the existence of the will. See *Robertson v. Robertson* (Note IV), 136 Am. St. 596, citing *Edson v. Parsons*, 155 N. Y. 555.

As to the buying the property with joint money and placing the title in the wife: assume this fact and others of like character to be competently established by the proof, and yet they

are irrelevant on the issues. The fact that property was paid for with joint money, and the title placed in the wife, can effect no more than to give the husband a right to enforce a trust to the extent of his contribution. Proving it will not dispense with his proving the contract pleaded, because so buying and placing gives neither party *all* the property. The majority declares, over and again, and in every variety of expression, that all that was done, was done "under the terms of said contract." Plaintiff demands all the property because he has performed what the alleged contract requires. In attaching importance to the alleged manner of dealing with the property, the majority confuses the case with a suit to enforce a trust, to the extent of half the property. Plaintiff is not declaring on a trust in part of the property. He says, "Give me more than the law of trusts will give, because my contract entitles me to more." Under the contract, he claims the land given his wife by her parents. Without such contract, no court would give the husband all of that land. It is manifest that proving property was bought with joint funds and title placed in the name of one party is no evidence that the parties made a contract that, on the death of one, the survivor should have all of the property. With all deference, it seems to me the majority is confused on *what* is indispensable proof and on what is proper evidence to establish whatsoever *is* indispensable. The mind of man cannot conceive how this plaintiff can get *all* the property without competent proof that the contract he sues on was made, and that its provisions entitle him to all. It seems to be conceded that, on the question, the only competent testimony is that of Mr. Walker. As, then, nothing will base the relief the majority proposes to give plaintiff except the contract pleaded, and as nothing but the testimony of Mr. Walker is competent evidence upon the existence and provisions of this contract, elimination brings about that plaintiff can have no relief unless the testimony of Walker establishes the contents of the paper with the clarity required by hornbook law. To whether it does this I now address myself.

III. There is a denial that the alleged contract bore the signatures of plaintiff and his wife. The only competent testi-

mony as to signatures is that of Mr. Walker, and he disclaims ability to speak to the question. He says:

"At this time, I don't think I was acquainted with the genuine signature of either one of them: that is, to take the signatures by themselves and say whether it was their genuine signature,—I wouldn't be able to do that."

IV. Part of Mr. Walker's testimony is clear. I have but one criticism to make of the dealing with it by the majority. It asserts that Mr. Walker carefully read the paper. The testimony is:

"Q. State whether or not you examined this contract. A. Yes, I read it. Q. Did you or not read it carefully? A. I think I did. Q. You read it carefully? A. I would have to do that, from the question that you asked me."

This is not, in strictness, any statement that the paper was carefully read. The clear testimony is this:

"The contract was handed to me, and I was asked to read it and give my opinion as to whether or not it was valid and binding. Mrs. Stewart said it was the thought of both that she would, in all probability, outlive him, and they wanted to know whether the contract would have the effect of giving her all their property, in case of his death, and whether, in case of her death, it would have the same effect as to him. They expressed the desire that, in case of death of either, the other should have all the property which they owned at the time. After an examination, I said to them that, in my judgment, it was a valid and binding contract; that I should advise that each make a will in favor of the other, and then, in my judgment, the contract and the wills would be binding and valid. Thereupon, I prepared two wills, one for each. They were exactly alike, · except that Mrs. Stewart made a special bequest of her watch to one of her nieces."

It will be noticed that nowhere in this statement does the witness assume to state the wording of the contract he examined. What he does say is that, in his present opinion, the paper examined by him had some provision which would effect that the survivor should have all "their" property, provided mutual wills were executed. He does not reveal a page in his memory which exhibits what the contract was, but gives his deduction

from some things he does remember. His reasoning is that the parties desired a contract to a certain general effect; that he examined to see whether they had one, and found that they had, if wills were added. His deduction is that the contract, when supplemented by the wills, would, at the death of either, give "their" property to the other. He could testify truthfully just as he does, if, in fact, the paper merely provided that partnership property in existence when one partner died should go to the other if the partnership had not been earlier dissolved. His testimony does not negative a provision making the contract effective only if death occurred by a stated time. It would seem certain that the witness did not read a contract such as is set out in the petition, because, if the contract examined was such a one as that, there was no occasion to say that the contract would be binding and valid if the parties made the will aforesaid, and that then, in his judgment, "the contract and the wills would be binding and valid." If the contract provided that all property owned by either partner or the partnership should go to the survivor, no matter when the death occurred, and no matter whether the partnership then still subsisted, there was no occasion to make a will. Such will gave less than such a contract. Such contract would give the survivor all. The will would give nothing but the individual property and the half interest in the partnership possessed by the decedent. The majority intimates that advising the wills may have been due to abundance of caution. The witness makes no such claim. He does not say he thought the contract would effect the purpose of the parties, but advised it would be safer to make wills, and so save all doubt upon the point. He says the wills were necessary: in other words, that the contract did not contain the survivorship clause. His testimony is:

"I said to them that, in my judgment, it was a valid, binding contract, and I would advise that she and her husband each make a will in favor of the other, and that *then*, in my judgment, the contract and the wills would be binding and valid."

And there is no room for urging mere abundance of caution. The majority not only concedes but asserts that the advisor was well skilled in the law. We are all agreed that the alleged contract was effective without the making of a will. No skilled

lawyer would doubt it. As well say that proof that a deed was made is not weakened by the fact that a skilled lawyer who claims he saw an effective deed advised the grantee to take a mortgage on the same land from the same grantor. In the dissent by Mr. Justice Evans, addressed to the finding that the land given to Mrs. Stewart by her parents should go to plaintiff, the point I have just spoken to is most forcefully dealt with. It is there said, as to the right to include the land given the wife by her parents, that "rests wholly upon four little words," found in the alleged contract.

No attention was directed to particular words. * * * Nor did the proof offered purport to be anything but an approximation or substance of the contract. * * * The method adopted for the proof of the contents of the alleged lost contract was a very vague one. The purported copy set forth in the pleading was formulated by the pleader; not by the witness. * * * Is the evidence clear and convincing that these little words were contained in the alleged lost contract? * * * He was testifying to his recollection of the contents of a paper read 20 years before, which had been completely forgotten by him for many years. Can it be said that this general and approximate recollection by the witness of the contents of this paper is clear and convincing evidence that the paper contained the four words * * * upon which the title to the 136 acres hangs? I cannot think so."

It seems to me the only flaw in the dissent is failing to hold that what is said of proof of part of plaintiff's claim applies with equal force to all of the claim. All, as well as part, rests upon the proof of the alleged contract.

V. Counsel for appellee evidently were of opinion that the testimony referred to would not meet the exigencies of this case. They did not stop with it. They brought the witness squarely to the vital point, and attempted to have him say that the paper examined by him contained the survivorship clause pleaded. Assume here that witness carefully read the paper on a single occasion, 20 years in the past. No matter how carefully it was read, that will not add to the clarity of the testimony which attempts to give the result of such reading. When the vital point was reached, and the witness was asked concerning the

alleged survivorship clause, this occurred: He was asked to examine "that part of the first page of the petition closed in pencil line, and to state whether or not, as you recollect, the same is substantially a copy of the contract exhibited to you that day by Mrs. Stewart, and on which you gave her the advice you did and prepared the wills you have testified to preparing." He answered, over objection:

"I could not from recollection give the contents of that paper, only in a general way. This paper agreed in the parentheses on the first page of the original petition is as near my recollection of it as I can give now, and I think it is my opinion that the date 1882,—in this, I think it was a year earlier, 1881. Now I do not say that to be sure. I think it was 1881, from my recollection of the contract, and perhaps more from my knowledge and of their business and when they were doing business and from the conversation there that day; and from that I think this is incorrect as to its date, although it may be correct as to its date; but the contents of this is as near my recollection of what that contract was as I can give it." (Ab. 81.)

This testimony does not appear in the majority opinion. If it be as much as referred to, it must be by the declaration that the contents of the paper "are as fully proven and as clearly made known as if the written instrument itself were before the court." In all deference, that is a rather strong indorsement of this loose, almost incoherent testimony.

### 5-a

This loose statement deals with an examination made 20 years before the day on which this testimony was given. To be sure, there is an attempt to strengthen the case by claiming an extraordinary memory for the witness. On page 77 of the abstract appears a claim by the witness to remember, 20 years back, where all the parties were sitting, with reference to each other, and that he remembers plaintiff "had his feet upon the desk." If this supports the case of the plaintiff because it does disclose an extraordinary memory, that case is weakened because it appears also, and most strongly, that the witness lacked average memory. Eleven years before the day on which he testified, he drew and witnessed a will for Mrs. Stewart. On

the day of the trial, he remembered what occurred 20 years earlier, when he examined the alleged contract, but he had utterly forgotten the making of this will, which was 9 years' more recent than the examination of the contract. It may be said that it is not unusual to remember an event long past, and to forget one more recently occurring. As a rule, this is true only where senile dementia is indicated. Be that as it may, such an avoidance can hardly avail where the more recent event is highly impressive—as much or more so than the more remote occurrence. I submit the witness does not claim to remember that the contract was the one pleaded. But if, as is insisted by the majority, he does remember the contents of the contract, from a single examination of the paper, made 20 years before, he should not have forgotten the will in question, prepared 9 years subsequent to the examination of the contract. The will is exceedingly elaborate and complicated, and must have required great care and preparation. What is more, if the witness remembered, 20 years after the examination of the contract, the terms of that contract, then he surely remembered those terms at a time 9 years earlier. Grant that one might remember a contract 20 years after reading it, and not remember a will drawn by him 11 years after drawing it, I know of no peculiarity of the human mind by which one would remember the terms of a contract 20 years after reading the contract, and have forgotten the same contract 11 years after reading it. If, then, the witness did remember the contract when he drew this will, it is inexplicable how he can have forgotten the will. As said, not only was it complicated and laborious, but it was an absolute repudiation of the contract. To follow the majority to the logical end, one must believe that the witness here had so good a memory as that one may depend on his narration of the terms of a contract read 20 years before, and so poor a memory that he has utterly forgotten the drawing and witnessing of the will which destroyed that contract, which will he drew only 11 years after reading the contract. I do not care to elaborate the claim that he did forget the will. A reference to page 74 of the abstract will demonstrate that he did.

On one theory, he had forgotten the contract when he prepared this will. If so, it is strange he remembered the same

contract 8 years later. If his testimony were clear,—and it is not,—the weight of it must be seriously affected by his not having recollected the contract in 1907, while professing to recollect it in 1915. On the other theory, if he did recollect the contract in 1907, when he drew what should certainly have impressed him as a breach of the contract, then the fact that he does not now remember the very making of such a will greatly detracts from any claim that may be made that his testimony establishes he recollected the material clause in the contract, in the year 1915. The majority does not mention the forgetting of the will. I do not overlook the witness says he has been pretty busy in the last 30 years, and has transacted a great deal of court business and written many instruments. If the fullness of his life explains why he has forgotten the making of this will, it also affords a reason for being skeptical as to his recollection of the contract. If a full professional life explains why, in 1915, he had forgotten an impressive occurrence in 1907, that absorption is some reason for doubting that, in 1915, he could recollect, from one reading, a paper read by him in 1896.

VI. It has, I think, been made to appear that Mr. Walker does not profess to remember the terms of the alleged contract. And up to this point, his testimony is neither clear, convincing, nor satisfactory. I now come to a matter which comes near to demonstrating affirmatively that, on September 26, 1913, only some 15 months before, he testified he did not remember the alleged contract. And this point the majority gives practically no attention to. On that day, he signed and had plaintiff verify an application reciting that said will had been filed for probate, and praying that same be admitted to probate. This will utterly disregarded the alleged contract. If he remembered the terms of that contract when he became a witness, in January, 1915, he should have remembered them on September 26, 1913, when this application to probate was made. If he then remembered these terms, said application is inexplicable. If the terms of the contract were then remembered, and are what plaintiff now asserts them to be, the maker of the will had no property to will. Why should one who knew the will was a piece of waste paper ask that it be probated? Why should he say to the court,

on oath of his client, that "this applicant was the husband of decedent, and is interested in the estate and the settlement thereof?" If, by contract, he owned all the property devised by the will, what did it matter that he was the husband of deceased? The statement is, in effect, a declaration that his rights in the property arose from that relation, and not from contract. Why should one who knew that decedent had no estate, that there was no "property of the estate," and that he owned all that the will touched, say that, "owing to the character of the property of the estate, the nature of the legacies in the will, and some other matters that may be involved in the estate, it is desired that all matters as to the probate of the will and questions as to its being admitted to probate be determined at an early date?" Why should one who owned all the property described in the will say "that, so far as the applicant knows or is informed, there will not be any objections made to the probate of the will?" The testator having nothing to devise, how was it material to say that "the person named as executor in said will is not now a resident of Iowa?" Why, as late as October 24, 1913, was there a contest made against this executor's serving, on the ground that, because a nonresident, he could not manage the estate properly? When the executor resisted, giving as one reason that testatrix intended to enlarge her legacy by the fees due an executor, why was it answered that the legacy as found in the will was all that testatrix "intended to leave that branch of the family?" Why should Mr. Walker testify that he advised this application in order "to have the property taken care of?" If it was remembered that the contract made plaintiff owner, it did not matter what ability to manage that property the executor named in the will had or did not have; it did not matter what intent there was to enlarge his legacy. No application that the probate court care for the property was necessary. The owner of the property could demand it and care for it himself. There was no need for the owner to have the court act because of "the character of the property of the estate." This owner had no interest "in the estate and the settlement thereof." As to him, there was no estate to settle, and "no property of the estate." It is evident that, a short time before the petition in this suit was filed,

neither Mr. Walker nor the plaintiff remembered any contract such as is now being asserted. Plaintiff pleads that decedent "had no right or interest in any of the property, either real or personal, which, in what is termed her last will, she purports to bequeath or devise, by which she could deprive this plaintiff of the sole possession and absolute ownership of the same at her decease." In second amendment to petition it is pleaded that all the property attempted to be willed was accumulated "under the terms of said contract." This was evidently not remembered when said probate proceedings were conducted, a short time before the petition in this suit was filed. The only possible explanation is that, while witness remembered, in January, 1915, that there was such a contract as is now asserted, he did not remember it on September 26, 1913, and on October 24, 1913. But such explanation comes very near to destroying the standing of the memory of the witness.

I adopt the statements of Mr. Justice Evans as to the inconsistent conduct exhibited in the application to probate and the contest on who should be appointed executor, but am unable to see why that inconsistency operates only against giving plaintiff a certain part of the property. It seems to me it is as much and as good reason for denying him all of it.

### 6-a

But I must not overlook that the majority attempts an explanation. It is that the probate proceedings were initiated because "it was his duty, under the law, to file the will with the clerk for probate. There is a penalty for suppressing it. Section 5043 of the Code of 1897." That statute provides a severe penalty if one having in his possession or under his control any last will "willfully suppress, secrete, deface or destroy the same * * * with intent to injure or defraud any devisee, legatee or other person." How could this statute touch the plaintiff or his counsel, after plaintiff had promptly filed said will with the clerk? What penalty does it threaten that compelled the application to probate aforesaid? The statute does not explain.

6-b

There is still another time at which it was forgotten that plaintiff owned this property. He was served with formal notice to make an election under the statute. Everything indicates that the witness Walker drew the resulting declination to take under the will. The statute has, of course, no application where the deceased spouse leaves no property. It is, therefore, undeniable that a statute election to take under the will is a solemn admission that the testator owns what the will devises. A declination under the statute, as much as does a taking, admits that testator owns such property, because the declination works an election to take, instead of what is given by the will, such part of said property as is given by statute.

VII. The witness is competent, but not disinterested. He states laboriously what he did and did not do about drawing pleadings and aiding in trial. But he studiously refrains from saying that he has no financial interest growing out of the fact that his partner is conducting this litigation. The case is fairly within *State v. Jensen*, 178 Iowa 1098, where a partner was disqualified from helping prosecute an indictment, because of a civil suit carried on by the other partner.

VIII. Some things shown by the evidence tend to disprove, rather than to prove, that the claimed contract ever existed. One alleged provision of it is that the husband "is to transact and do all the business, and sign the firm name E. A. Stewart to any and all papers necessary." If there was such contract, why did husband and wife affix their individual signature to the paper selling the partnership store, or to the contract to buy the Gwinup farm?

The alleged contract contemplates inevitably that the time of the husband belonged to the joint venture, and the majority opinion asserts he so devoted it. Why, then, the testimony that he did a large separate business?

There is testimony that, when the husband effected insurance, he did so in the name of the wife. If he had the interest he now claims, he endangered the insurance by obtaining it in that manner.

Why did plaintiff respond to a formal notice requiring him

to elect, by declining to take under the will? The will gave him a life estate in lands which, under the contract claimed by him, he owned in fee. The natural answer by the possessor of such a contract would have been a statement that he had no occasion to elect whether or not to take under the will, because he owned the property attempted to be disposed of by the will.

### 8-a

The plaintiff, as a witness, was asked:

"Q. Now, why did you have these deeds all in her name?" He answered: "Well, the reason I put it in her name was because it was property we wanted to keep for ourselves. I was always sickly, and if anything happened to me, she would have no trouble afterwards. You see in the Alcorn affair they had robbed the widow there, and we had no children, and we fixed it so, when I was gone, there would be nothing to bother the woman. That was my reason."

When asked whether he recollected why he put "the title of the Kansas land in the name of E. A. Stewart," he answered: "It was because it was trading land, and I was not expecting to keep it."

How unnatural all these answers are, in view of the asserted contract. How natural it would have been to answer:

"I did these things because the contract I am seeking to enforce required me to put the title to lands bought in the name of my wife."

### 8-b

All the testimony, including Mr. Walker's, agrees that Mrs. Stewart was a conscientious, God-fearing woman. It is inconceivable that such a woman would have made the will she made, knowing that she had made such a contract as is asserted. Something is claimed for the wills as being a construction of what was intended by the contract. If the contract was worded as claimed, it needed no construction. But if construction is the theory, an honest woman construed it when she made her last will, which repudiates such a contract as plaintiff asserts.

8-c

The contract is unnatural and unreasonable. It is claimed to have been made with one who had just left an earlier partnership as an insolvent, with judgments hanging over his head. The enterprise required a capital of some $215, which the husband borrowed by having the father of his wife sign the note. Past treatment of Mrs. Stewart by her parents made it reasonably plain that she would receive a large property from them. It is testified to without dispute that she was a capable business woman. Yet, the claim asserted is that, in this situation, she made an agreement that everything she might ever own should belong to her husband after she died, and that even what her parents might give could not be willed to those of her blood, to the grandchildren of the donors. Something is claimed for the love of the wife for the husband. If that was strong enough to prove that she desired to give him what her parents gave her, at the expense of the only grandchildren of those parents, how can it be explained that she made a will recognizing the natural claims of these grandchildren?

IX. I am constrained to dissent from the holding of the majority that the contents of the contract "are proved by the testimony of Mr. Walker * * * Its contents are as fully proven and as clearly made known as if the written instrument itself were before the court." Nor can I agree that the probate proceedings are "only a circumstance tending to show, if anything, that he consented to the revocation of the original reciprocal will * * * and it has no such tendency under the record in this case." I think that these proceedings, and all else which has so far been adverted to, work that plaintiff has failed to establish his case by that amount and quality of evidence which the law requires.

It would be affectation to go deeply into authority on the degree and quality of proof required. For manifest reasons, sounding in public policy, the evidence by which one person takes the estate standing in the name of another must be clear, satisfying, convincing,—practically overwhelming. See *Baker v. Vining*, 30 Me. 121; *Mullong v. Schneider*, 155 Iowa 12; *Andrew v. Andrew*, 114 Iowa 524, 526, and cases cited; *Malley v.*

*Malley,* 121 Iowa 237, and cases cited; *Stiles v. Breed,* 151 Iowa 86; *Potter v. Potter,* 185 Iowa 559; and *Melin v. Melin,* (Iowa) 171 N. W. 20 (not officially reported). If the claim were that the alleged contract was oral, instead of the claim that it was written and has been lost, appellee would be confronted with the requirements of the statute on express trusts and those of the statute of frauds. See *Edson v. Parsons,* 155 N. Y. 555; *McClanahan v. McClanahan,* 77 Wash. 138 (137 Pac. 479). Where the law fears perjury will be committed unless there be a duly signed writing, it may well be said that the law is hostile to oral proof that the contract was in writing and has been lost. The danger of perjury is as imminent in one case as the other. While I do not claim the law will refuse evidence of the contents of a contract which must be made in writing, where it is shown that the contract has been lost, I do say that the policy underlying the requirement that the contract shall be in writing emphasizes that the proof of the contents to such lost writing must be clear and overwhelming. See *In re Estate of Thorman,* 162 Iowa 237, 239, and cases cited.

Speaking to the farm given the wife by her parents, the dissent by Mr. Justice Evans says:

"I think that the evidence in that respect has much more corroboration in the circumstances, as well as in its reasonableness and probability, than does the evidence pertaining to the individual property of the wife. I cannot avoid doubt of its sufficiency, even in this respect. I am not disposed, however, to interpose my mere doubt as a basis of dissent on this point from the settled judgment of the majority."

This indicates upon just what that "settled judgment" rests. The basis seems to be that doubts of the sufficiency of the testimony are not sufficiently vigorous. The consultation gave me the impression that the claim of contract was sustained because, while the testimony for plaintiff was not strong, it had not been demonstrated that the asserted contract had not been made. As I view it, this exhibits a mental twist. Such a contract cannot be held to be established unless the testimony is practically overwhelming, and clearly satisfies the judicial mind of its existence. It is not enough that the claim of the plaintiff is possible, or even probable. It is not enough that the testi-

mony for the defendant has not satisfied the court the alleged contract was not made. If, when the testimony is all considered, the mind of the judge is not abidingly satisfied that the claims of the plaintiff are made out, then his claim should be rejected.

We said, in *Stennett v. Stennett*, 174 Iowa 431, at 435, that, to establish such a contract, "the proof must be clear, unequivocal and definite," and held that the proof there did not meet this standard. Many inconsistencies and contradictions found present in this case controlled in the *Stennett* case. It being found here that the witness is skilled in the law, unusual clarity was demanded.

Insistence upon this burden will, in individual cases, work hardship, but not a greater hardship than to deny all relief because the contract was not made in writing originally, even though there be irrefragable proof that such contract was orally entered into. The occasional hardship will be found to arise because of negligence, and such isolated suffering is more than compensated by general safety afforded by insistence upon strict proof. I say, in all respectfulness, that an affirmance here will tend to prove the statement in *Graves v. Bonness*, 97 Minn. 278 (107 N. W. 163, at 164), that it has been charged:

"American appellate courts rule on such questions to sustain or reverse the trial courts because of convictions as to the merits of the case, or for other reasons which they are unwilling or unable to express."

And say further that the majority opinion will either upset elementary rules of the law of evidence, or else be a decision that will remain in the books without either being followed or being expressly repudiated; that it will accrete the army of judicial "snags," and of cases that are overruled by being "distinguished."

### Division Two

The plaintiff can recover nothing in this suit, even if he proved the existence and the contents of the alleged contract.

I have exhibited the probate proceedings as an evidentiary factor bearing on the weight to be given to the testimony of Mr. Walker. I now enlarge, and assert that these proceedings are more than a piece of evidence on that point, and that they

estop plaintiff from now asserting that he, and not testatrix, owned the property described in the will and in the petition.

As to this point, the majority says:

"There is no estoppel shown in this case. No prejudice resulted to any of the contesting parties as a consequence of the silence, or even active participation, of the plaintiff in the probate of this will."

It is to be gathered from the opinion that there is no estoppel because the admission of the will to probate did not settle who owned the property described in the will, and that the admission was no benefit to plaintiff and no injury to the appellants. Grant that. That such want of advantage and of prejudice, respectively, is fatal to an estoppel *in pais* is true. But the majority overlooks that the estoppel here is one that the books classify as "estoppel by conduct in court." In such estoppel, the element of prejudice is supplied by the fact that it would discredit the administration of justice if one were allowed to assert a thing in court in aid of an object then being promoted, and later, to aid a differing object by an assertion contrary to the first. See Bigelow on Estoppel (6th Ed.) 783. I contend that it is overwhelmingly settled that, on estoppel by inconsistent conduct in court, it is immaterial that neither loss nor gain have resulted from the change in position.

It is hornbook law that one may not make a solemn assertion in court, then having knowledge of all the facts, and afterwards obtain relief by the assertion of something which is so inconsistent with the position first taken as to destroy that position. See *Tone v. Shankland*, 110 Iowa 525, at 528; *Clough v. London & N. W. R. Co.*, L. R. 7 Exch. 26; *Butler v. Hildreth*, 5 Metc. (Mass.) 49; *McCormick v. McCormick Harv. Mach. Co.*, 120 Iowa 593; *Theusen v. Bryan*, 113 Iowa 496, at 502; *Oliver v. Monona County*, 117 Iowa 43; *Powers v. Iowa Glue Co.*, 183 Iowa 1082; *Sloanaker v. Howerton*, 182 Iowa 487; *Kirkhart v. Roberts*, 123 Iowa 137, 139; *Kelly v. Norwich F. Ins. Co.*, 82 Iowa 137, 142; *Wapello St. Sav. Bank v. Colton*, 143 Iowa 359, wherein is quoted with approval the statement of Lord Kenyon that:

"A man shall not be permitted to blow hot and cold with reference to the same transaction, or insist at different times on the truth of each of two conflicting allegations, according to the promptings of his private interests."

We said, in *Thorson & C. Co. v. Baker,* 107 Iowa 49, at 50, that no suitor shall be allowed to invoke the aid of the courts on contradictory principles of redress upon one and the same line of facts. In *City of Sioux City v. Chicago & N. W. R. Co.,* 129 Iowa 694, we condemn the assuming of "antagonistic positions in litigation with reference to the same property or the same fact or state of facts."

We said, in *Seeley v. Seeley, etc., Co.,* 130 Iowa 626, at 632, that it is not essential to the application of this principle that there shall be technically an election of remedies, "and no action in court need be taken as the basis for such an election; any unequivocal act with knowledge whether in court or not is sufficient." And this estoppel prevails as well on plain inferences from the facts in hand as on the facts themselves. Bigelow on Estoppel (6th Ed.) 788, citing *Ormes v. Dauchy,* 82 N. Y. 443; *Trustees of East Hampton v. Kirk,* 68 N. Y. 459, 464.

Assent to a particular proceeding in court, if given with knowledge of the facts, is conclusive. Bigelow on Estoppel (6th Ed.) 787, citing *Marquette, H. & O. R. Co. v. Marcott,* 41 Mich. 433. It is all summed up in Bigelow on Estoppel (6th Ed.) 783, by a statement that it may be laid down as a broad proposition that one who, without mistake of fact, has deliberately taken a particular position in the course of any litigation must forever act consistently with that position.

What if obtaining the admission to probate gave plaintiff nothing? Even if the position first taken gets a party nothing of value, how can that affect the rule, which is that one may not get something in court which would give him something by making an assertion which is contrary to a position taken earlier? The rule has often been applied where nothing was got by the first position. *Kearney Mill. & Elev. Co. v. Union Pac. R. Co.,* 97 Iowa 719, at 724; *Elliott v. Iowa Cent. Bldg. & L. Assn.,* 109 Iowa 39. A party has been estopped because of a position taken in an action which he discontinued by dismissal without trial (*Kearney Mill. & Elev. Co. v. Union Pac. R. Co.,* 97 Iowa

719, at 726), and where all he got by taking the earlier position was a judgment void for want of jurisdiction (*District Twp. of Clay v. Ind. Dist.*, 69 Iowa 88, at 90, 91; *Shank v. Mohler*, 93 Iowa 273; *Ellis v. White*, 61 Iowa 644, at 646; *Arthur v. Israel*, 15 Colo. 147 [25 Pac. 81] ;*Nield v. Burton*, 49 Mich. 53 [12 N. W. 906]). The making the matter turn on want of prejudice wholly disregards all applicable law.

The election "cannot be withdrawn though it has not been acted upon by another by any change of position." *Kearney Mill. & Elev. Co. v. Union Pac. R. Co.*, 97 Iowa 719, at 725, citing Bigelow on Estoppel (5th Ed.) 674. See Bigelow on Estoppel (6th Ed.) 733; *Insurance Co. v. Norton*, 96 U. S. 234; *Ward v. Day*, 4 Best & S. *337, *355; *Campbell v. Kauffman Milling Co.*, 42 Fla. 328 (29 So. 435); *O'Bryan Bros. v. Glenn Bros.*, 91 Tenn. 106 (17 S. W. 1030). Where one claims she dismissed her suit without prejudice, she is estopped to claim in the Supreme Court that there was a final judgment to be reviewed; and it is not material that elements essential to an estoppel *in pais* are lacking, or that the taking of the contradictory position has worked no prejudice. *Mollring v. Mollring*, 184 Iowa 464. Where defendant makes a special appearance, and challenges the jurisdiction of the court on the ground that notice was served on an improper person, if effective service is subsequently had, it may not thereafter plead in abatement on the ground that the action was prematurely brought because the first notice was binding and effective; and it is held the position may not so be changed even if the original assertion to the contrary has caused the plaintiff no injury. *Hueston v. Preferred Acc. Ins. Co.*, 184 Iowa 408. Though a delivery of a shipment by a carrier is unauthorized, it is ratified if the shipper thereafter, with knowledge of all the facts, demands payment of the price from the buyer, and such demand estops him to sue the carrier for conversion although his subsequent taking of this contrary position has worked no injury. *Midland Linseed Co. v. American L. F. Co.*, 183 Iowa 1046.

I conclude that the disposition of the point by the majority on the ground that appellant suffered no prejudice is a disposition upon a ground which is not in the least controlling, and is utterly untenable.

II.   The will made by the wife in favor of plaintiff was made on May 1, 1896, and after the date of the alleged contract. The deed from the parents to Mrs. Stewart was a gift, and it was made later than said will was, on December 26, 1896. (Abs. 100, 216.) The contract on its face is a partnership contract. Throughout all the pleadings, it is treated as being such a contract. The opinion so treats it, time and again. The will cannot be said to have contemplated devising this gift from parent to child, because the gift was not yet made. If the partnership contract is carried beyond disposing of all property accumulated by the partnership, then the partnership contract diverts the farm given to Mrs. Stewart from those of the blood to a stranger to the blood. In other words, the partnership contract is claimed to cancel the will of Mrs. Stewart, by which she attempts to pass the land given to her by her parents to the only grandchildren of those parents. A court of equity should not strain to give the contract such effect. And the least that should be done is to construe the alleged contract to cover nothing but property accumulated by the partnership, as such. On this point the dissent of Justice Evans covers the ground fully and most ably.

III.   One statement by the majority is that "plaintiff, however, does not rely on a claim of partnership as a basis for the relief sought in this case." In the light of the pleadings, of plaintiff's own testimony, and of the relief sought and given, this is a most remarkable pronouncement. If language can express a thing aptly, this record and the majority opinion overflow with words that can have but the one meaning, to wit:

That the parties contracted to and did form a partnership; that same accumulated property; that such contract partnership subsisted until the death of the wife dissolved it; that it then possessed the property in question; and that plaintiff demands all of such property because the terms of the partnership contract give him all of the property if the partnership is still in existence when the other partner dies. In other words, the entire framework and the theory of the case is that the parties remained in the contract partnership until death dissolved that partnership; and that while, without the contract, the survivor could not have all the partnership property, by the terms of the

contract he gets all such property, provided the partnership subsists until death dissolves it, and leaves the claimant the survivor. It is not a suit based upon the fact that the parties were once in partnership, dissolved it, and then formed a partnership other than the one formed by said contract, or that they formed a trust by investing the money of the dissolved contract partnership in the name of one of the parties. It is a suit demanding that the survivor have all the property because the partnership subsisted until Mrs. Stewart died, and that, therefore, the condition precedent of the contract had transpired. I invite an examination of the petition and the decree, and of the testimony of Mr. Stewart, and am sure that thereupon it must be found that, in this suit, plaintiff can recover nothing unless it is made to appear that the partnership continued until it was dissolved by the death of Mrs. Stewart. If it was dissolved by something other than that, no rights accrue under the contract, whatever rights the plaintiff may have. I submit it is absolutely proved that the partnership was dissolved years before Mrs. Stewart died.

Nothing appears in the alleged contract to compel the partnership to continue until one of the partners die. See 2 Lindley on Partnership (2d Ed.) 571. The partnership was dissolved about September 25, 1894, by a sale of the entire stock and the fixtures. The contract expressly provides that the partnership shall be one conducting a "general store." Necessarily, such a sale of stock and fixtures terminated such a partnership. It is well settled that "a sale which practically includes all the property used by a firm in carrying on its business, whether made by the firm or a member thereof, operates as a dissolution thereof." See note found on page 416 of 69 Am. St., citing the following authorities: *Patterson v. Hare,* 4 N. Y. App. Div. 319, 320; *Pennville Nat. Gas & Oil Co.,* 21 Ind. App. 1; *Whitton v. Smith,* 1 Freem. Ch. 231; *Smith v. Vanderburg,* 46 Ill. 34; *Thompson v. Bowman,* 6 Wall. (U. S.) 316; *Blaker v. Sands,* 29 Kans. 551; *Dellapiazza v. Foley,* 112 Cal. 380.

It follows plaintiff should fail in this suit because, even if the alleged contract were proved, such contract defeats the suit brought to enforce it. The contract relief is due only if death dissolved the partnership. Here, it appears as matter

of law that it was dissolved by act of the partners in selling out. The contract gives property to the partner who shall survive the other—to the surviving partner in the contract partnership. There can be no such surviving partner, if there be no partnership existing when one of the parties to the contract dies. It follows inevitably that the contract deals with, nothing save property that may be owned by the contract partnership when death dissolves it. In a suit upon such contract, it is fatal that the contract partnership was dissolved before either party to the contract died.

I am unable to agree to the statement in the dissent of Justice Evans, that the selling of the store ''was not necessarily a dissolution of the partnership.'' So to declare overlooks that the contract was for a partnership in a mercantile store. Of necessity, selling that store and its stock, fixtures, and good will ended the contract enterprise. No doubt, investment of what was realized from operating and from selling the store might become the capital of a new partnership, or trust property. No store business was engaged in after the sale. And whatever rights might accrue after the sale dissolved the contract partnership, they do not rest on the contract to become partners in the store business that was sold. The sale ended the contract business and the contract.

IV. It is defended that, if the contract was made, it was with purpose to hinder and delay the creditors of plaintiff. I have to say there is no reasonable explanation of why the contract was entered into, if that was not the purpose. Just before its alleged making, plaintiff had retired from a concern that had become insolvent, and there were unsatisfied judgments against him, and he was insolvent. The contract was not recorded. It was never mentioned or shown, except that, 13 years after it was made, it was read by Mr. Walker; and as to showing it to him, it was no doubt thought that the exhibition was a privileged communication. Plaintiff made no claim of rights under the contract, and his wife asserted that he had none. No proper reason can be imagined for covering the half interest of the plaintiff with a firm name that was the name of the wife. Such firm name concealed that plaintiff had any interest which creditors could subject. It told the world that the wife owned all.

No purpose but a covinous one explains putting the lands in the name of the wife. The contract stipulation that lands should so be held does not explain. The contract was at an end when most of the property was acquired. Of course, I agree with the statement of the dissent of Justice Evans that defendants had the burden of proving the alleged fraudulent purpose. But I submit they have proven it. It must usually be done by circumstantial evidence. It is, here, and the evidence exhibits most of the main badges of fraud. I am unable to agree that the evidence ''simply is that the fact of partnership was not generally known.'' At the least, the evidence establishes an intent to *hinder and delay* creditors.

V. Little can be added to what Mr. Justice Evans says on the effect of Section 3154 of the Code. The only criticism I can make is to say that his reasoning calls for his applying the ban of the statute to all the property, rather than to a part of it. The statute provides that neither spouse has any interest in the property of the other which can be made the subject of contract between them. This contract clearly contemplates that any lands or other property either party might acquire in his own right should be transferred to the partnership by death of the survivor. This amounts to an advance agreement for the transfer of such interest as was owned by reason of being a spouse. To put it mildly, it was an advance relinquishment of dower rights to the partnership, and ultimately to the surviving partner. Be that as it may, there is an express provision that the survivor should take all the property, and in consideration pay the debts of both the partnership and of the deceased partner. This might easily become an advance agreement that rights of the spouse exempt from the payment of debts should be exhausted by the paying of debts.

I would reverse.

SALINGER, J. (dissenting from the supplemental opinion). While I am with the result, I am of opinion the steps that lead to that result demand more than is now given. My reasons for that position are fully stated in the dissent I have heretofore filed. I call special attention to that part of the dissent which points out that Mr. Walker never claimed to remember the con-

tents of the alleged lost contract, and that he discloses a memory which would make it impossible for him to remember it. Also call attention to the conduct utterly inconsistent with the claim now being advanced and sustained; to the fact that Mr. Walker advised the contract would be binding if wills were made, while, if the contract is as plaintiff claims, it was valid and binding without the making of wills. I call attention to the last-quoted paragraph in the left-hand column of page 628, 173 N. W.; to the last paragraph on the left-hand side of page 629, and the remainder of that page to the first paragraph on page 630, and the remainder of that column to Paragraph a in the right-hand column of page 630, and the first paragraph on page 631. I insist once more that the present holding destroys the rule that claims such as this must be established by evidence that is conclusive and overwhelming. I wish to specially emphasize my opposition to the pronouncement:

"There is no estoppel shown in this case. No prejudice resulted to any of the contesting parties as a consequence of the silence or even active participation of the plaintiff in the probate of this will."

In my judgment, this overrules an unbroken line of cases to the effect that, as to inconsistent conduct in court, the rules governing an estoppel *in pais* do not obtain, and that such inconsistencies cannot be permitted, even though no prejudice has resulted, and though no one has changed his position. The cases so holding are set out on page 633. I wish to emphasize further that here was, at best, nothing but a partnership contract, dealing with the fruits of the partnership; that, therefore, the surviving partner has no interest in anything but partnership property existing when the partnership was dissolved; that this partnership was dissolved in the lifetime of Mrs. Stewart; and therefore, her partner has no interest in the property of which Mrs. Stewart thereafter died seized. (See page 634.)

I would reverse.